# In the United States Court of Federal Claims

BID PROTEST
No. 17-287C
Filed Under Seal July 19, 2017
Reissued for Publication: August 16, 2017[*]

| | |
|---|---|
| TREADWELL CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Post-award bid protest; preliminary |
| v. ) | injunction, RCFC 65; supplementing the |
| ) | administrative record; delivery schedule. |
| THE UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| v. ) | |
| ) | |
| HAMILTON SUNDSTRAND ) | |
| CORPORATION, ) | |
| ) | |
| Defendant-Intervenor. ) | |
| ) | |

*Anthony J. Marchese*, Counsel of Record, *Pamela J. Bethel*, Of Counsel, *Carol L. O'Riordan*, Of Counsel, *Taimur Rabbani*, Of Counsel, O'Riordan Bethel Law Firm LLP, Washington, DC, *Kenneth A. Martin*, Of Counsel, Martin Law Firm, Brookeville, MD, for plaintiff.

*Sean Siekkinen*, Trial Attorney, *Douglas K. Mickle*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Chad A. Readler*, Acting Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington DC; *Gary M. Saladino*, Counsel, United States Department of the Navy, Naval Surface Warfare Center, Philadelphia, PA, for defendant.

---

[*] This Memorandum Opinion and Order was originally filed under seal on July 19, 2017 (docket entry no. 38). The parties were given an opportunity to advise the Court, by August 18, 2017, of their views with respect to what information, if any, should be redacted. The parties filed a joint status report on August 16, 2017 (docket entry no. 39) proposing certain redactions which the Court has adopted. Accordingly, the Court is reissuing its Memorandum Opinion and Order dated July 19, 2017, with the agreed redactions indicated by three consecutive asterisks within brackets ([***]).

*John W. Chierichella*, Attorney of Record, *Keith R. Szeliga*, Of Counsel, *Adam A. Bartolanzo*, Of Counsel, Sheppard Mullin Richter & Hampton LLP, Washington, DC, for defendant-intervenor.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I.    INTRODUCTION

Plaintiff, Treadwell Corporation ("Treadwell"), brought this post-award bid protest matter challenging the United States Navy's ("Navy") decision to award a contract for low pressure electrolyzer ("LPE") oxygen-generating systems (the "LPE Contract") to Hamilton Sundstrand Corporation ("Hamilton"). Treadwell has moved for a preliminary injunction and seeks a stay of Hamilton's performance under the LPE Contract, pursuant to Rule 65 of the Rules of the United States Court of Federal Claims ("RCFC"). For the reasons discussed below, the Court **DENIES** Treadwell's motion for a preliminary injunction.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.  Factual Background

In this post-award bid protest matter, Treadwell challenges the Navy's decision to award a contract for low pressure electrolyzer oxygen-generating systems for use in Navy submarines to Hamilton, in connection with the Navy's Solicitation No. N64498-16-R-5003 (the "RFP"). *See* Compl.; *see also* AR at 159. Treadwell is an unsuccessful offeror in connection with the RFP for the LPE Contract. Compl. at ¶ 7; Pl. Mot. Treadwell also manufactures a LPE oxygen-generating system that is currently in use by the Navy. Compl. ¶ 11.

In its motion for a preliminary injunction, Treadwell requests that the Court set aside the Navy's decision to award the LPE Contract to Hamilton and stay further performance of that contract for the following seven reasons: (1) Hamilton's proposal was non-responsive; (2) even

---

[1] The facts recited in this Memorandum Opinion and Order are taken from plaintiff's complaint ("Compl."); plaintiff's motion for a preliminary injunction ("Pl. Mot."); plaintiff's memorandum in support of its motion for a preliminary injunction ("Pl. Mem."); the second corrected administrative record ("AR"); defendant's response and opposition to plaintiff's motion for a preliminary injunction ("Def. Resp."); defendant-intervenor's response and opposition to plaintiff's motion for a preliminary injunction ("Int. Resp."); and plaintiff's reply in support of its motion for a preliminary injunction ("Pl. Reply"). Except where otherwise noted, the facts cited herein are undisputed.

if Hamilton's proposal was responsive, the Navy's determination that Hamilton's proposal was technically acceptable was arbitrary and capricious; (3) the Navy failed to evaluate all proposals on an equal playing field; (4) the Navy's post-award modification of the LPE Contract constituted a material and cardinal change; (5) the Navy's decision to grant Hamilton the change to the delivery schedule for the LPE Contract that Treadwell previously requested was arbitrary and capricious; (6) the Navy unlawfully awarded the LPE Contract with the intent to modify; and (7) the Navy failed to conduct meaningful discussions.[2]  *See* Pl. Mem. at 5-11; Pl. Reply at 15-30.  Treadwell further alleges that it has been prejudiced by each of the aforementioned alleged errors, because Treadwell would have been awarded the LPE Contract but for these errors.  Pl. Reply at 21, 28-29.  And so, Treadwell requests that the Court set aside the Navy's award decision and enjoin Hamilton from further performance under the LPE Contract.  *See* Compl. at Prayer for Relief.

### 1.  The Request For Proposals

On December 28, 2015, the Navy issued a request for proposals to design, manufacture, test and deliver low pressure electrolyzer oxygen-generating systems which involve a self-contained oxygen generator to be used in submarines.  AR at 159-245; Compl. ¶ 10.  The RFP contemplates the award of an indefinite-delivery, indefinite-quantity contract, based upon a lowest-priced, technically acceptable basis.  Compl. ¶ 12; AR at 208-09, 243.

Specifically, the RFP provides that proposals will "be evaluated by a team of Government personnel in accordance with" an established valuation plan, which would rate offerors' proposals based on "Technical Capability, Corporate Experience, and Past Performance, and on an overall basis."  AR at 242.  With respect to the technical capability factor, the RFP provides that "offerors shall furnish information on its capability to furnish a Low Pressure Electrolyzer that will meet or exceed all the requirements set forth in the Specification."  AR at 234.  In addition, the RFP provides that "[t]he Government reserves the right to judge which proposals show the required capability."  AR at 243.

---

[2] Since commencing this action, Treadwell has withdrawn an eighth protest ground–that the Navy abandoned the lowest-priced technically-acceptable basis for award of the LPE Contract.  Pl. Reply at 27.

The RFP also contains several requirements regarding the delivery schedule for the first article testing unit, and the first article test for the low pressure electrolyzer oxygen-generating systems. In this regard, the RFP requires that the awardee of the LPE Contract provide the Navy with a first article testing unit, LPE simulators and LPE production units. AR at 160-64. The statement of work for the RFP also describes the tests and procedures that the awardee must complete in order for the government to approve the first article testing unit. AR at 181-89. For instance, the RFP outlines the requirements for the quality conformance and visual inspections, as well as the various testing requirements associated with first article testing, such as an endurance test, a vibration test and a shock test. *Id.*

In addition, the RFP incorporates Federal Acquisition Regulation ("FAR") 52.209-3, which provides, in relevant part, that:

> Before first article approval, the acquisition of materials or components for, or the commencement of production of, the balance of the contract quantity is at the sole risk of the Contractor. Before first article approval, the costs thereof shall not be allocable to this contract for (1) progress payments, or (2) termination settlements if the contract is terminated for the convenience of the Government.

AR at 207, 353 (quoting 48 C.F.R. § 52.209-3(g)). The prescriptive language for this FAR clause, located at FAR 9.305, provides that:

> Before first article approval, the acquisition of materials or components, or commencement of production, is normally at the sole risk of the contractor. To minimize this risk, the contracting officer shall provide sufficient time in the delivery schedule for acquisition of materials and components, and for production after receipt of first article approval. When Government requirements preclude this action, the contracting officer may, before approval of the first article, authorize the contractor to acquire specific materials or components or commence production to the extent essential to meet the delivery schedule (see Alternate II of the clause at 52.209–3, First Article Approval—Contractor Testing, and Alternate II of the clause at 52.209–4, First Article Approval—Government Testing. Costs incurred based on this authorization are allocable to the contract for (1) progress payments and (2) termination settlements if the contract is terminated for the convenience of the Government.

48 C.F.R. § 9.305. Lastly, Amendment 0002 to the RFP requires that the awardee deliver the first article testing unit "15 months after award of delivery order." AR at 252.

The RFP also contains several provisions relevant to the delivery schedule for the LPE simulators and LPE production units. AR at 197. In this regard, the RFP provides that:

> Any supplies and services to be furnished under this contract shall be ordered by issuance of delivery order or task orders by the individuals or activities designated in the Schedule. *Such orders may be issued from date of contract award through 60 months thereafter.*

AR at 208 (emphasis added). And so, the RFP does not specify when the Navy would issue delivery orders for the LPE simulators and LPE production units. *See id.*

In addition, the delivery schedule set forth in the RFP provides that:

> 52.211-8.      TIME OF DELIVERY (JUN 1997)
>
> (a) The Government requires delivery to be made according to the following schedule:
>
> REQUIRED DELIVERY SCHEDULE
>
> DELIVERY INFORMATION
> Delivery shall be specified in individual delivery orders. Delivery of LPE units is to be made at a rate of one (1) LPE per month beginning fifteen (15) months after receipt of each individual order. Delivery of LPE Simulator is the [sic] made at a rate of one (1) LPE Simulator per month beginning fifteen (15) months after receipt of each individual order. . . .
>
> Offers that propose delivery that will not clearly fall within the applicable required delivery period specified above, will be considered nonresponsive and rejected.

AR at 197; *see also* AR at 252. And so, the RFP calls for delivery of the LPE production units to be made at a rate of one LPE production unit per month, beginning fifteen months after receipt of a delivery order. AR at 197. The RFP similarly calls for the delivery of the LPE simulators to be made at a rate of one LPE simulator per month beginning 15 months after receipt of a delivery order. *Id.*

The RFP also provides that the "LPE delivery schedule shall be included in the technical proposal." AR at 313. In this regard, the RFP further provides that:

> The Government will evaluate equally, as regards time of delivery, offers that propose delivery of each quantity within the applicable delivery period specified above. Offers that propose delivery that will not clearly fall within the applicable required delivery period specified above, will be considered nonresponsive and rejected.

AR at 197. In addition, the RFP provides that "[i]f the offeror proposes no other delivery schedule, the required delivery schedule above will apply." *Id.* Finally, the RFP provides that the completion and submission of the award documents "will constitute an offer (proposal) and

will be considered the offeror's unconditional assent to the terms and conditions of this solicitation and any attachments and/or exhibits hereto."  AR at 233.

## 2.  Evaluation Of Proposals

After the Navy issued the RFP, Treadwell and Hamilton submitted responsive proposals. *See* AR at 385-546, 657-867.  These proposals were the only proposals that the Navy ultimately deemed to be technically acceptable.  Compl. ¶¶ 35-36, 85; AR at 907-16, 1369-71.

Prior to the submission of its initial proposal, Treadwell requested that the Navy change the delivery deadline for the first article testing unit to six months after receipt of contract award. AR at 252.  Treadwell also requested that the Navy change the delivery deadlines for the LPE production units and LPE simulators to one per month, beginning fifteen months after receipt of the contract and first article testing unit approval.  *Id*.

On December 28, 2015, the Navy rejected Treadwell's request and responded that:

The delivery schedule for the production units remains unchanged.  The delivery schedule for the [first article testing] unit is 15 months after award of delivery order. Simulators are also to be delivered 1 per month beginning 15 months after award of delivery order.

*Id*.

Thereafter, Treadwell submitted an initial proposal on February 10, 2016.  AR at 657-867.  In the cover letter to its initial proposal, Treadwell states that:

The solicitation requires that the contractor be able to complete First Article Test, one production unit, and one simulator within fifteen MARC [months after receipt of contract].  These three simultaneous requirements can only be accomplished within fifteen months by a contractor that has already completed LPE design, First Article testing and simulator design.

AR at 659.  Hamilton also submitted an initial proposal in response to the RFP on February 12, 2016.  AR at 385-546.

Following the receipt of the initial proposals, the Navy conducted an evaluation of Treadwell's proposal and Hamilton's proposal with regards to technical capability, corporate

experience and past performance.[3]  AR at 907-09, 915-16.  On March 11, 2016, the Navy issued summaries of its technical ratings for the two proposals.  AR at 907-09, 915-16.  In the summaries, the Navy deemed Treadwell's proposal to be technically acceptable and Hamilton's proposal to be technically unacceptable.  *Id*.  And so, on April 11, 2016, the Navy sent letters to Hamilton and Treadwell notifying the offerors of any issues with respect to the initial proposals and providing an opportunity for Hamilton and Treadwell to submit revised proposals.  AR at 917-18, 923-24.

 On May 16, 2016, Treadwell submitted a revised proposal.  AR at 1014-139. Treadwell's revised proposal set forth the following delivery schedule for the first article testing unit, LPE simulators and LPE production units:

- The delivery schedule for all CLINs will be in full compliance with Amendment 0002 of [the RFP].
- LPE Production units (CLINs 0003 – 0007) will be delivered at a rate of one (1) per month beginning fifteen (15) months after receipt of each individual order.
- LPE Simulators (CLINs 0008 & 0009) will be delivered at a rate of one (1) per month beginning fifteen (15) months after receipt of each individual order.
- The LPE First Article Test (CLIN 0001) and Test Report (CLIN 0002) will be completed and delivered no later than fifteen (15) months after award of delivery order.

AR at 1126.

Hamilton also submitted a revised proposal on May 17, 2016.  AR at 941-1013.  In its revised proposal, Hamilton proposed a schedule for qualification of fifteen months, meaning Hamilton planned to complete first article testing unit approval within fifteen months of contract award.  AR at 1009.  Hamilton did not otherwise address the delivery schedule in its revised proposal.  *See* AR at 941-1013.

Following the evaluation of revised proposals, the Navy deemed the revised proposals submitted by Treadwell and Hamilton to be technically acceptable.  AR at 1140-41.  And so, on

---

[3] The Navy also evaluated the technical acceptability of a third offeror.  AR at 910-14.  The Navy deemed the third offeror's proposal to be technically unacceptable, and the third offeror did not submit a revised proposal.  *Id*.

May 27, 2016, the Navy sent Treadwell and Hamilton letters affording both offerors the opportunity to submit final proposal revisions.  AR at 1142, 1152-53.

Treadwell submitted its final proposal revision on June 2, 2016.  AR at 1339-59.  In its final proposal revision, Treadwell reiterated that "[t]he solicitation required that the contractor be able to complete First Article Test, one production unit and one simulator within fifteen [months after receipt of contract]."  AR at 1341.  In addition, Treadwell proposed a price of [***].  AR at 1345.

Hamilton submitted its final proposal revision on June 3, 2016.  AR at 1165-1338.  In its final proposal revision, Hamilton again represented that its "proposed schedule for Qualification is fifteen (15) months. . . ."  AR at 1321.  Hamilton did not otherwise address the delivery schedule for the LPE Contract in its final proposal revision.  *See generally* AR at 1165-1338.  But, Hamilton's final proposal revision provides that Hamilton "is agreeable to the terms, conditions, and provisions included in the solicitation . . . ."  AR at 1166.  In addition, Hamilton proposed a price of $42,782,640.00−approximately [***] less than Treadwell's final proposed price.  AR at 1331-34, 1345.

### 3.  Contract Award

The Navy deemed the final proposals from Treadwell and Hamilton to be technically acceptable.  AR at 1369-71.  And so, on July 13, 2016, the Navy awarded the LPE Contract to Hamilton, based upon the agency's determination that Hamilton submitted the lowest-priced, technically acceptable proposal.  AR at 1394-1462.

### 4.  Post-Award Discussions And Contract Modifications

On July 13, 2016, the date of contract award, the Navy issued Delivery Order 0001 requesting the delivery of the first article testing unit, and two LPE production units.  AR at 1463-94.  The Delivery Order states in a note that "[p]roduction units shall not be delivered until after Approval of First Article."  AR at 1465.

On July 22, 2016, the Navy met with Treadwell for an in-person debriefing.  AR at 1505.  During the debriefing, the Navy notified Treadwell that the Navy's technical evaluation team evaluated the proposed delivery schedules provided by both Hamilton and Treadwell.  *Id.*

On September 13, 2016, Hamilton responded to the Navy's delivery order by stating that:

> [W]e were not aware or had planned financially to be supporting parallel production procurement during the design & development effort.  We are happy to support this additional opportunity but if qualification issues arise that require system/hardware changes UTAS would have to support.  This additional risk was not anticipated.

AR at 1669.

On November 2, 2016, the Navy issued a modification to the LPE Contract.  AR at 1541, 1545.1-1545.28.  Pursuant to the modification, the Navy extended the original delivery deadline for the two LPE production units from October 13, 2017, to November 30, 2018.  AR at 1545.27. The delivery order modification also clarified that the deadline for delivery of the LPE production units would be 12 months after first article testing unit approval.  AR at 1541, 1545.27.

Treadwell first learned of the modification to the LPE Contract on December 7, 2016, after submitting several Freedom of Information Act requests to the Navy.  Compl. ¶¶ 48, 51-53. In subsequent discussion with the Navy, the Navy informed Treadwell that the Navy always intended to have the LPE production units delivered after approval of the first article testing unit. *Id*. ¶ 66.  And so, the Navy further informed Treadwell that the modification to the LPE Contract was intended to remove any ambiguity related to such intent.  *Id*.

### B.  Procedural Background

On March 1, 2017, Treadwell commenced this action.  *See generally* Compl.  On March 1, 2017, Treadwell also filed a motion for a preliminary injunction and a memorandum in support thereof.  *See generally* Pl. Mot.; Pl. Mem.

On March 2, 2017, Hamilton filed a motion to intervene in this action.  *See* Mot. to Intervene.  On March 2, 2017, the Court issued a Scheduling Order granting Hamilton's motion to intervene and setting forth the briefing schedule for Treadwell's motion for a preliminary injunction.  *See* Scheduling Order, March 2, 2017.  On March 2, 2017, the Court also entered a Protective Order in this matter.  *See* Protective Order.

On March 23, 2017, the government filed the administrative record.  *See generally* Initial AR.  On March 27, 2017, the government and Hamilton filed their responses to Treadwell's motion for a preliminary injunction.  *See generally* Def. Resp.; Int. Resp.

On March 31, 2017, the government filed a corrected administrative record.  *See* Notice, March 31, 2017.  On April 5, 2017, the government filed a second corrected administrative record.  *See generally* AR; *see* Notice, Apr. 5, 2017.  On April 11, 2017, Treadwell filed a reply in support of its motion for a preliminary injunction.  *See generally* Pl. Reply.

This matter having been fully briefed, the Court addresses the pending motion for a preliminary injunction.

## III.   LEGAL STANDARDS

### A.  Jurisdiction And Bid Protests

The Tucker Act grants the United States Court of Federal Claims jurisdiction over bid protests brought by "an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1) (2012).  In bid protest cases, this Court reviews agency actions under the Administrative Procedure Act's ("APA") "arbitrary and capricious" standard.  *See* 28 U.S.C. § 1491(b)(4) (adopting the standard of review set forth in the Administrative Procedure Act).  And so, under the APA's standard, an award may be set aside if, "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure."  *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).  The United States Court of Appeals for the Federal Circuit has also recognized that:

> When a challenge is brought on the first ground, the test is whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a "heavy burden" of showing that the award decision had no rational basis.  When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.

*Id*. (citations omitted).

In reviewing an agency's procurement decision, the Court should recognize that the agency's decision is entitled to a "presumption of regularity."  *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971) (citations omitted), *overruled on other grounds by*

*Califano v. Sanders*, 430 U.S. 99 (1977).  And so, the Court should not substitute its judgment for that of the agency.  *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997).  "The protestor must show, by a preponderance of the evidence, that the agency's actions were either without a reasonable basis or in violation of applicable procurement law" or procedure.  *Info. Tech. & Applications Corp. v. United States*, 51 Fed. Cl. 340, 346 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003); *see also Bannum, Inc. v. United States*, 60 Fed. Cl. 718, 723 (2004); *Gentex Corp. v. United States*, 58 Fed. Cl. 634, 648 (2003).  This standard "is highly deferential" and "requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors."  *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000) (citing *Bowman Transp., Inc. v. Ark.–Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974)).

In addition, as long as there is "a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion . . ."  *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (citations omitted).  But, if "the agency 'entirely fail[s] to consider an important aspect of the problem [or] offer[s] an explanation for its decision that runs counter to the evidence before the agency,'" then the resulting action lacks a rational basis and, therefore, is defined as arbitrary and capricious.  *Ala. Aircraft Indus., Inc.–Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

## B.  Preliminary Injunctions, RCFC 65

The Tucker Act authorizes this Court to "award any relief that the court considers proper, including . . . injunctive relief," in bid protest matters.  28 U.S.C. § 1491(b)(2); *see* RCFC 65. However, "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis omitted) (citation omitted); *Intel Corp. v. ULSI Sys. Tech., Inc*., 995 F.2d 1566, 1568 (Fed. Cir. 1993) (The award of "a preliminary injunction is a drastic and extraordinary remedy that is not to be routinely granted.").

In deciding whether to grant emergency injunctive relief, the United States Court of Appeals for the Federal Circuit has directed that the Court consider:  (1) whether the plaintiff is likely to succeed on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if

the Court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief. *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004); *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993); *OAO Corp. v. United States,* 49 Fed. Cl. 478, 480 (2001).

"Although the factors are not applied mechanically, a movant must establish the existence of both of the first two factors to be entitled to a preliminary injunction." *Altana Pharma AG v. Teva Pharm. USA, Inc.*, 566 F.3d 999, 1005 (Fed. Cir. 2009) (citing *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001)). In addition, the Federal Circuit, in reviewing this Court's decisions on motions for preliminary injunction, has held that "[n]o one factor, taken individually, is necessarily dispositive. . . . [T]he weakness of the showing regarding one factor may be overborne by the strength of the others." *FMC Corp.*, 3 F.3d at 427. Conversely, "the absence of an adequate showing with regard to any one factor may be sufficient" to deny injunctive relief, given the weight or lack of it assigned to the other factors, to justify the denial" of a motion for a preliminary injunction. *Id.*

### C.  Supplementing The Administrative Record

Lastly, the Federal Circuit held in *Axiom Resource Management*, that the "parties' ability to supplement the administrative record is limited" and that the administrative record should only be supplemented "if the existing record is insufficient to permit meaningful review consistent with the APA." *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379-81 (Fed. Cir. 2009); *see also Caddell Constr. Co., Inc. v. United States*, 111 Fed. Cl. 49, 93 (2013). In *Axiom*, the Federal Circuit cited to the Supreme Court's decision in *Camp v. Pitts*, which states that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." 564 F.3d at 1379 (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). This focus is maintained in order to prevent courts from using new evidence to "convert the arbitrary and capricious standard into effectively de novo review." *L-3 Commc'ns EOTech, Inc. v. United States*, 87 Fed. Cl. 656, 671 (2009) (citations omitted).

This Court has interpreted the Federal Circuit's directive in *Axiom* to mean that supplementation of the administrative record is permitted to correct mistakes and fill gaps, but is not permitted when the documents proffered are unnecessary for an effective review of the

government's procurement decision.  *Id*. at 672.  And so, this Court has precluded supplementation of the administrative record with declarations that contain "post-hoc contentions of fact and argument."  *Id*.

## IV.    LEGAL ANALYSIS

In its motion for a preliminary injunction, Treadwell seeks a stay of Hamilton's performance under the LPE Contract until the resolution of this matter.  *See generally* Pl. Mot. Specifically, Treadwell requests that the Court set aside the Navy's decision to award the LPE Contract to Hamilton and stay further performance of that contract for the following reasons:  (1) Hamilton's proposal was non-responsive; (2) even if Hamilton's proposal was responsive, the Navy's determination that Hamilton's proposal was technically acceptable was arbitrary and capricious; (3) the Navy failed to evaluate all proposals on an equal playing field; (4) the Navy's post-award modification of the LPE Contract constituted a material and cardinal change; (5) the Navy's decision to grant Hamilton the change to the delivery schedule for the LPE Contract that Treadwell previously requested was arbitrary and capricious; (6) the Navy unlawfully awarded the LPE Contract with the intent to modify; and (7) the Navy failed to conduct meaningful discussions.  *See generally* Pl. Mem.; Pl. Reply.

The government and Hamilton counter that Treadwell has not met its heavy burden to show that Treadwell is entitled to emergency injunctive relief, because the administrative record shows that the Navy's decision to award the LPE Contract to Hamilton was reasonable and in accordance with the terms of the RFP and applicable law.  *See generally* Def. Resp.; Int. Resp. For the reasons discussed below, the Court agrees.  And so, the Court **DENIES** Treadwell's motion for a preliminary injunction.

### A.  Treadwell May Not Supplement The Administrative Record

As an initial matter, Treadwell may not supplement the extensive administrative record in this matter with certain emails and other documents that have been attached as exhibits to its complaint.  In its motion for a preliminary injunction, Treadwell relies upon two documents that have been filed as exhibits to Treadwell's complaint.  Pl. Reply at 14, 29.  Specifically, Treadwell cites an email from its Executive Vice President to the Navy's contracting officer and a related attachment, dated September 18, 2015, which contains Treadwell's comments regarding the RFP.  Compl. at Ex. 2; *see* AR at 159.  In addition, Treadwell also cites a letter from

Treadwell to the Navy, dated August 29, 2016, which discusses Treadwell's debriefing in connection with the subject procurement. *Id*. at Ex. 12.

To the extent that Treadwell seeks to supplement the existing administrative record with these documents, such supplementation is unwarranted. The government filed a comprehensive administrative record in this matter on March 23, 2017, and the government has subsequently corrected the administrative record on March 31, 2017, and on April 5, 2017. *See* Initial AR; Notice of Correction, March 31, 2017; *see generally* AR; *see* Notice of Correction, April 5, 2017. As the Federal Circuit held in *Axiom*, Treadwell's ability to supplement the administrative record in this case is limited, and that the administrative record should be supplemented only "if the existing record is insufficient to permit meaningful review consistent with the APA." *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1379-81; *see also Caddell Constr. Co., Inc.*, 111 Fed. Cl. at 93. Here, the email and other documents that Treadwell relies upon pertain to discussions that occurred between the Navy and Treadwell during the course of this procurement. *See* Compl. at Exs. 2, 12. But, these documents do not correct, or fill any gaps in, the administrative record before the Court. And so, the Court will not supplement the existing administrative record with these additional documents.[4]

## B.  Treadwell Has Not Shown That It Is Entitled To Injunctive Relief

The record evidence in this matter demonstrates that Treadwell has not met its heavy burden to show that it is entitled to preliminary injunctive relief. It is well-established that preliminary injunctions are extraordinary and drastic remedies that should not be granted unless the movant, by a clear showing, carries the burden of persuasion. *Intel Corp.*, 995 F.2d at 1568 (holding that the award of "a preliminary injunction is a drastic and extraordinary remedy that is not to be routinely granted"). And so, when deciding whether to grant Treadwell's request for emergency injunctive relief in this case, the Court considers four factors: (1) whether the plaintiff is likely to succeed on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the Court withholds injunctive relief; (3) whether the balance of hardships to the parties

---

[4] Nine of the documents filed as exhibits to plaintiff's complaint have been included in the administrative record in this matter. *See* Compl. at Exs. 1, 5, 6, 7, 8, 9, 10, 13, 14; AR at 159-357, 657-61, 1014-18, 1339-43, 1349-462, 1463-94, 1505, 1513-45, 1545.1-1545.28. But, exhibits 2, 3, 4, 11, 12, 15, 16, and 17 to the complaint have not been included in the administrative record. *See* Compl. at Exs. 2, 3, 4, 11, 12, 15, 16, 17; *see generally* AR.

favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief. *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004); *FMC Corp.*, 3 F.3d at 427; *OAO Corp.*, 49 Fed. Cl. at 480.

While the aforementioned factors are not applied mechanically, this Court has long recognized that, Treadwell "must establish the existence of both of the first two factors to be entitled to a preliminary injunction." *Altana Pharma AG*, 566 F.3d at 1005 (citing *Amazon.com, Inc.* 239 F.3d at 1350). The Federal Circuit has also held that "[n]o one factor, taken individually, is necessarily dispositive. . . . [T]he weakness of the showing regarding one factor may be overborne by the strength of the others." *FMC Corp.*, 3 F.3d at 427. Conversely, "the absence of an adequate showing with regard to any one factor may be sufficient" to deny injunctive relief. *Id*.

### 1. Treadwell Has Not Demonstrated Irreparable Harm

The aforementioned factors weigh against granting Treadwell's request for injunctive relief in this case.

First, Treadwell has not shown that it would be irreparably harmed absent a stay of Hamilton's performance under the LPE Contract. As Treadwell correctly observes in its motion for a preliminary injunction, this Court has held that "denial of a fair opportunity to compete" under a solicitation "and loss of financial benefit from a lawful procurement process" may constitute irreparable harm. *BCPeabody Constr. Servs., Inc. v. United States*, 112 Fed. Cl. 502, 514 (2013); Pl. Mem. at 11-12. But, the evidentiary record in this case makes clear that the stay of performance that Treadwell seeks here would leave Treadwell in exactly the same position that Treadwell would be in if the Court were to deny the requested relief. Treadwell is, and would remain, an unsuccessful offeror for a contract that has been previously awarded to Hamilton.

The timing of the commencement of this litigation–some eight months after award of the LPE Contract to Hamilton–also calls into doubt Treadwell's argument that it will be irreparably harmed absent a stay of Hamilton's performance. *See* Pl. Resp.; Pl. Reply at 31; Int. Resp. at 21-22. It is undisputed that the Navy awarded the LPE Contract to Hamilton many months ago–on July 13, 2016. There is also no dispute that Hamilton's performance under the LPE Contract is well underway. *See* Def. Resp. at 15. Given these factual circumstances, Treadwell simply has

not demonstrated that it will suffer irreparable harm at this stage in the procurement process, if the Court declines to stay Hamilton's performance under the LPE Contract while this litigation is pending.

### 2.  Treadwell Has Not Proven A Likelihood Of Success On The Merits

Even if the Court concludes that Treadwell would suffer irreparable harm absent a stay of Hamilton's performance under the LPE Contract, the administrative record also makes clear that Treadwell is not likely to succeed upon the merits of any of its claims.  In fact, a review of the administrative record shows that the Navy's decision to award the LPE Contract to Hamilton was reasonable and that the Navy's subsequent decision to modify the contract after the award of this contract did not violate the terms of the RFP, or applicable law.  And so, for the five reasons discussed below, Treadwell has not demonstrated a substantial likelihood of success upon the merits of its claims.

### a.  Treadwell's Claim That Hamilton's Proposal Was Unresponsive Or Not Technically Acceptable Is Unsubstantiated By The Record Evidence

First, Treadwell's claim that Hamilton's proposal is unresponsive to the RFP because Hamilton failed to show that it could meet the strictest delivery schedule possible under the LPE Contract is neither supported by the case law upon which Treadwell relies, nor by the text of the RFP.  In its motion for a preliminary injunction, Treadwell argues that Hamilton's proposal was not responsive to the RFP because the RFP afforded the Navy discretion regarding the timing of performance under the LPE Contract, and Hamilton "fail[ed] to demonstrate its ability to meet the strictest timeline the government could impose."  Pl. Mem. at 6-7 (citations omitted).  To support this argument, Treadwell relies upon the Government Accountability Office's ("GAO") decision in *Alerting Communicators of America*, B-236253, 89-1 CPD ¶ 438 (Comp. Gen. Nov. 7, 1989), where the GAO denied a protest because the protestor failed to commit to the solicitation's stated delivery schedule.  *Alerting Communicators of America*, B-236253, 89-1 CPD ¶ 438, at *1 (Comp. Gen. Nov. 7, 1989).

In *Alerting Communications*, the GAO found that, where an invitation for bids required that the successful awardee's performance begin within ten days of award, and that the awardee must complete performance within 180 days after receiving the notice to proceed, and the

protestor added another condition to this schedule regarding the government's approval of a radio frequency, the subject bid was nonresponsive. *Id.* And so, the GAO determined that in that case the government properly concluded that the protestor's bid was unresponsive, because the bid did not commit to the delivery schedule set forth in the invitation for bids. *Id.*

The GAO did not, however, hold in that case that the bid was unresponsive because the bid failed to demonstrate an ability to meet the strictest delivery schedule possible in connection with that procurement. *Id.* Nor did the GAO hold, as Treadwell suggests in this case, that where a government solicitation affords the government full discretion to require performance at a time of the government's choosing, a bid or offer that fails to demonstrate an ability to meet the strictest deadline that the government could impose is nonresponsive. *Id.* And so, this case, and other GAO decisions relied upon by Treadwell, simply do not support Treadwell's argument that Hamilton had an obligation to show that it could meet the strictest delivery schedule that the Navy could impose under the LPE Contract. *See Coronis Construction*, B-186733, 76-2 CPD ¶ 177 (Comp. Gen. Aug. 19, 1976); *Kiewit Texas Construction*, B-402090 et al., 2010 CPD ¶ 27 (Comp. Gen. Jan. 12, 2010) (denying the protest because the offeror's proposal declined to follow the delivery schedule set forth in the solicitation).[5]

Treadwell's argument that Hamilton's proposal is unresponsive to the RFP is also undermined by the plain terms of the RFP. Treadwell alleges in its complaint that Hamilton's proposal is unresponsive because the RFP requires that Hamilton be capable of delivering the first article testing unit, the first LPE simulators and the first LPE production units within fifteen months of the award of the LPE Contract. *See* Compl. ¶¶ 18, 20. But, a plain reading of the RFP makes clear that the RFP does not contemplate, or require, the simultaneous delivery of these items. To the contrary, the RFP contemplates the approval of the first article testing unit before LPE production units or the LPE simulators may be delivered to the Navy. AR at 159-357.

---

[5] As the government observes in its opposition to Treadwell's motion, even if Hamilton could be required to meet the strictest delivery schedule possible, that schedule would allow for sufficient time after the approval of the first article testing unit for the delivery of the LPE production units and LPE simulators, because the RFP provides that delivery orders would be subject to the terms and conditions of the LPE Contract, including the contract's first article testing requirements. Def. Resp. at 21; 48 C.F.R. § 9.305; AR at 208, 1416-17.

In this regard, the RFP incorporates FAR 52.209-3, which warns potential contractors that starting production of deliverables under a government contract prior to first article testing unit approval would be at the sole risk of the contractor.  AR at 207, 352-53.  Specifically, FAR 52.209-3 provides that:

> Before first article approval, the acquisition of materials or components for, or the commencement of production of, the balance of the contract quantity is at the sole risk of the Contractor.  Before first article approval, the costs thereof shall not be allocable to this contract for (1) progress payments, or (2) termination settlements if the contract is terminated for the convenience of the Government.

AR at 207, 352-53; 48 C.F.R. § 52.209-3(g).  And so, the terms of the RFP require that Hamilton assume the financial risk of starting the production of the LPE simulators, or the LPE production units, prior to the approval of the first article testing unit.  48 C.F.R. § 52.209-3(g).

The evidence in the administrative record regarding the conduct of the Navy and Treadwell during this procurement also shows that the Navy did not intend for Hamilton to simultaneously deliver the first article testing unit with the first LPE simulators and first LPE production units, as Treadwell suggests.  *See generally* Pl. Mem.  The administrative record shows that the Navy specifically rejected a request from Treadwell during the procurement process to replace FAR 52-209-3(g) with an alternate version of this provision that would have allowed the Navy to financially support the commencement of production of the LPE production units and LPE simulators prior to first article testing unit approval.[6]  AR at 252.  And so, the record evidence shows that the Navy interpreted the RFP at the time to require approval of the

---

[6] The alternate language provides that:

> Before first article approval, the Contracting Officer may, by written authorization, authorize the Contractor to acquire specific materials or components or to commence production to the extent essential to meet the delivery schedules.  Until first article approval is granted, only costs for the first article and costs incurred under this authorization are allocable to this contract for (1) progress payments, or (2) termination settlements if the contract is terminated for the convenience of the Government.  If first article tests reveal deviations from contract requirements, the Contractor shall, at the location designated by the Government, make the required changes or replace all items produced under this contract at no change in the contract price.

48 C.F.R. 52.209-3(g) (Alternate II).

first article testing unit before the contract awardee would start to produce, or to deliver, the first LPE simulators and first LPE production units.  AR at 252, 347, 352-53.

The Court's reading of the RFP to require the approval of the first article testing unit prior to the delivery of the LPE production units and LPE simulators is also reinforced by FAR 9.305, which includes the conditions, requirements and instructions for using FAR 52.209-3.  *See* 48 C.F.R. §§ 9.305, 52.101, 52.209-3.  Specifically, FAR 9.305 provides, in relevant part, that:

> *Before first article approval, the acquisition of materials or components, or commencement of production, is normally at the sole risk of the contractor.  To minimize this risk, the contracting officer shall provide sufficient time in the delivery schedule for acquisition of materials and components, and for production after receipt of first article approval.*  When Government requirements preclude this action, the contracting officer may, before approval of the first article, authorize the contractor to acquire specific materials or components or commence production to the extent essential to meet the delivery schedule (see Alternate II of the clause at 52.209–3, First Article Approval—Contractor Testing, and Alternate II of the clause at 52.209–4, First Article Approval—Government Testing. Costs incurred based on this authorization are allocable to the contract for (1) progress payments and (2) termination settlements if the contract is terminated for the convenience of the Government.

48 C.F.R. § 9.305 (emphasis supplied).[7]  And so, FAR 9.305 also makes clear that the risk of commencing production before first article approval is normally borne by the contractor, and this provision specifically requires that government contracting officers provide sufficient time in the delivery schedule for the acquisition of materials, and for production, after receipt of first article approval.  AR at 207; 48 C.F.R. § 9.305.

Treadwell's reliance upon section F of the RFP to support its claim that Hamilton's proposal is unresponsive because the Navy could require Hamilton to simultaneously deliver the first article testing unit, first LPE production units and first LPE simulators, fifteen months after

---

[7] FAR 52.101(c) provides that:

> (c) Prescriptions. Each provision or clause in subpart 52.2 is prescribed at that place in the FAR text where the subject matter of the provision or clause receives its primary treatment. The prescription includes all conditions, requirements, and instructions for using the provision or clause and its alternates, if any.  The provision or clause may be referred to in other FAR locations.

48 C.F.R. § 52.101(c).

the contract award, is also misplaced.  AR at 197, 208; Compl. ¶¶ 18, 20.  Section F provides that:

> Delivery of LPE units is to be made at a rate of one (1) LPE per month beginning fifteen (15) months after receipt of each individual order.  Delivery of LPE Simulator is the [sic] made at a rate of one (1) LPE Simulator per month beginning fifteen (15) months after receipt of each individual order.

AR at 197.  While the above provision certainly requires the delivery of the LPE production units and LPE simulators beginning 15 months after receipt of a delivery order, this provision does not require that these items be simultaneously delivered with the first article testing unit.  *Id.*  As Treadwell acknowledges, the RFP gives discretion to the Navy regarding the timing of performance under the LPE Contract, and the RFP does not specify when the Navy would issue a delivery order for the production units and simulators.  Pl. Reply at 3.  And so, while it is certainly possible that the Navy could, and in fact did, issue delivery orders of the LPE production units and LPE simulators on the date of contract award, section F of the RFP does not require Hamilton to be capable of delivering the first LPE production units and first LPE simulators before the approval of the first article testing unit.

The Court is similarly unpersuaded by Treadwell's argument that Amendment 0002 to the RFP contemplates simultaneous delivery of the first article testing unit along with the first LPE production units and the first LPE simulators, within fifteen months of contract award.  AR at 208; Compl. ¶¶ 18, 20.  As Treadwell points out in its motion for a preliminary injunction, this amendment provides, in relevant part, that "the delivery schedule for the [first article testing] unit is 15 months after award of delivery order."  Pl. Reply at 11; AR at 280.  But, as discussed above, the RFP does not specify *when* the Navy must issue that delivery order.  The RFP also makes abundantly clear that the delivery orders for the LPE simulators and LPE production units "may be issued from the date of contract award through 60 months thereafter."  AR at 208.  And so, again, the Court finds no requirement in the RFP for the Navy to issue delivery orders for the first article testing unit, LPE production units and LPE simulators on the date of contract award.

For these same reasons, Treadwell's argument that Hamilton's proposal was not technically acceptable because Hamilton did not "clearly demonstrate they would meet [the RFP's] delivery schedule" is similarly belied by the record evidence.  Pl. Mem. at 6, 8.  The administrative record shows that the Navy reasonably determined that Hamilton's proposal

demonstrated that Hamilton was technically capable of meeting the delivery schedule called for under the RFP–delivery of the first article testing unit within 15 months of issuance of a delivery order for that item and, after the approval of the first article testing unit, the delivery of the LPE production units and simulators within 15 months of the Navy's issuance of delivery orders for those items.  AR at 1370-71.  Specifically, the administrative record shows that Hamilton expressly committed to the RFP's delivery schedule in its final proposal revision.  AR at 197 (the RFP provides that "[i]f the offeror proposes no other delivery schedule, the required delivery schedule" will apply).  In this regard, Hamilton's final proposal revision states that it was "agreeable to the terms, conditions, and provisions included in the solicitation."  AR at 1166.  Specifically, the administrative record shows that Hamilton planned to complete first article testing unit approval within fifteen months of contract award and, thereafter, to begin production of the LPE simulators and LPE production units.  AR at 1009, 1669.  And so, the record evidence shows that Hamilton agreed to the delivery schedule set forth in the RFP and that the Navy reasonably determined that Hamilton's proposal is technically acceptable.  AR at 197, 1166.

Indeed, at bottom, the plain terms of the RFP and the record evidence in this case demonstrate that the RFP does not require, or even contemplate, that Hamilton be capable of meeting a delivery schedule that would require the simultaneous delivery of the first article testing unit, first LPE simulators and first LPE production units under the LPE Contract within 15 months of the award of the LPE Contract.  The record evidence also makes clear that the Navy expected, and required, the approval of the first article testing unit to occur before the delivery of the other items called for under that contract.  Because Hamilton's proposal was responsive to the terms of the RFP, Treadwell is unlikely to succeed upon the merits of its claims that the Navy erred in awarding the LPE Contract to Hamilton.

**b.  Treadwell's Unequal Treatment Claim Is Also Unsubstantiated**

Treadwell is also unlikely to succeed upon the merits of its claim that the Navy failed to evaluate responsive proposals in connection with the LPE Contract on an equal playing field with respect to the contract's delivery schedule.  In its motion for a preliminary injunction, Treadwell argues that the Navy "relaxed its requirements for [the delivery schedule for] Hamilton, while holding Treadwell to the onerous delivery timeline it solicited."  Pl. Mem. at 9.

21

But, as discussed above, the RFP does not require that Hamilton meet the aggressive delivery schedule that Treadwell proposed in its proposal. Indeed, while Treadwell has maintained throughout the procurement process for the LPE Contract that it could simultaneously deliver the first article testing unit, first LPE production units and first LPE simulators, within 15 months of contract award, there is no requirement in the RFP that Hamilton do so. *See* AR at 197, 252, 1126, 1341 (demonstrating that Treadwell read the RFP to require "that the contractor be able to complete First Article Test, one production unit and one simulator within fifteen [months after receipt of contract]"). And so, the record evidence does not substantiate Treadwell's claim that the Navy relaxed the scheduling requirements for the LPE Contract with regards to Hamilton.

The administrative record also clearly demonstrates that the Navy equally evaluated Hamilton's proposals and Treadwell's proposals, and that the Navy's evaluation was based upon the evaluation factors set forth in the RFP. AR at 242, 907-16, 1140-41, 1369-71. And so, Treadwell's claim that the Navy treated Hamilton and Treadwell differently during the evaluation process is simply unsubstantiated by the record evidence. *See* AR at 1369-71.

### c. The Record Evidence Shows That The Navy's Contract Modification Was Not A Cardinal Change

Treadwell is similarly unlikely to succeed upon its claim that the Navy's November 2, 2016, modification of the LPE Contract constitutes a cardinal change. In its motion, Treadwell contends that the Navy's post-award modification to the delivery schedule for the LPE Contract constitutes a cardinal change, because Treadwell could not have reasonably anticipated this modification to the delivery schedule in light of the Navy's prior decision to deny a request from Treadwell to modify the contract's delivery schedule. Pl. Mem. at 10-11. But, the administrative record shows that the subject contract modification is not a cardinal change because the modification falls well within the scope of the original procurement for the LPE Contract.

It is well-established that the Competition in Contracting Act ("CICA") "requires executive agencies . . . to 'obtain full and open competition through the use of competitive procedures.'" *AT&T Communications, Inc. v. Wiltel, Inc.*, 1 F.3d 1201, 1204-05 (Fed. Cir. 1993). The Federal Circuit has also recognized that a cardinal change—a modification to a contract that is outside the scope of the original procurement—violates CICA and, thus, renders

the government in breach.  *Id*. at 1205 (holding that "'a cardinal change . . . occurs when the government effects an alteration in the work so drastic that it effectively requires the contractor to perform duties materially different from those originally bargained for'") (quoting *Allied Materials & Equip. Co. v. United States*, 215 Ct. Cl. 406 (1978)).  And so, to determine whether the modification at issue to the LPE Contract constitutes a cardinal change to that contract under CICA, the Court examines whether this "modification generally falls within the scope of the original procurement."  *AT&T Communications, Inc.*, 1 F.3d at 1204-05 (citing *American Air Filter Co*., 57 Comp. Gen. 567, 573 (1978)).

Here, the record evidence demonstrates that the Navy's November 2, 2016, modification to the LPE Contract falls within the scope of the RFP.  Specifically, the administrative record shows that the November 2, 2016, modification made two changes to the LPE Contract.  First, the modification extended the delivery deadline for the first two LPE production units under the contract from October 13, 2017, to November 30, 2018.  AR at 1545.27, 1669.  Second, the modification clarified that the delivery deadline for these LPE production units would be twelve months after approval of the first article testing unit.  AR at 1463-94, 1513-45.

The modification extending the delivery deadlines for the first two LPE production units falls within the scope of the original procurement.  As discussed above, the RFP addresses the delivery schedule for the LPE production units and provides that "Delivery of LPE units is to be made at a rate of one (1) LPE per month beginning fifteen (15) months after receipt of each individual order.  AR at 197; *see also* AR at 252.  The RFP does not, however, specify exactly *when* the Navy would issue the delivery orders for these units.  *See*, *e.g*., AR at 208.  Nor does the RFP specify the exact delivery dates for the LPE production units.  *Id*.  And so, because the RFP affords discretion to the Navy to set specific deadlines for the delivery of the LPE production units, the Navy appropriately exercised its discretion here by clarifying that the delivery deadline for the first two LPE production units would be November 30, 2018 in the November 2, 2016 modification.

The November 2, 2016, modification's clarification that the delivery deadline for the LPE production units would follow approval of the first article testing unit similarly falls within the scope of the original RFP.  Again, as discussed above, the RFP contemplates and requires that the first article testing unit be approved before commencing the production, and delivery, of the

LPE production units and LPE simulators.  The subject modification simply clarifies that the timing of the deliveries of the first LPE production units would be twelve months after approval of the first article testing unit.  *See* AR at 207, 252, 347, 352-53.  And so, again, this modification falls within the scope of the original RFP, and the Navy had no obligation under CICA to re-compete the LPE Contract.[8]

### d.  Treadwell's Claim That The Navy Awarded The LPE Contract With The Intent To Modify Is Unsubstantiated

The record evidence also does not substantiate Treadwell's claim that the Navy improperly awarded the LPE Contract to Hamilton with the intent to later modify the delivery schedule for the contract, in violation of FAR 15.206.  Pl. Mem. at 8; Pl. Reply at 26; 48 C.F.R. § 15.206.  To support this claim, Treadwell notes that FAR 15.206 provides, in relevant part, that:

> (d) If a proposal of interest to the Government involves a departure from the stated requirements, the contracting officer shall amend the solicitation, provided this can be done without revealing to the other offerors the alternate solution proposed or any other information that is entitled to protection . . . .

48 C.F.R. § 15.206(d).  A plain reading of FAR 15.206 shows that this provision contemplates a departure from the stated requirements of the RFP *prior* to the award of the LPE Contract.  *Id.* Given this, FAR 15.206 would not be applicable to this case, because Treadwell alleges that the Navy improperly decided to modify the LPE Contract "no more than five (5) days after award" of the LPE Contract.  Pl. Reply at 26; 48 C.F.R. § 15.206(d).

In addition, to the extent that Treadwell claims that the Navy acted in bad faith with respect to the modification to the LPE Contract's delivery schedule, Treadwell fails to point to any concrete evidence in the record that would overcome the well-established presumption that the Navy's officials have discharged their duties in good faith in connection with this procurement.  *Road & Highway Builders, LLC v. United States*, 702 F.3d 1365, 1368 (Fed. Cir.

---

[8] The administrative record also makes clear that Treadwell did not seek the change in the delivery schedule for the LPE Contract that the Navy actually granted in the November 2, 2016, modification.  It is undisputed that Treadwell requested that the Navy modify the delivery deadlines for the LPE production units and LPE simulators to require the delivery of one production unit and one simulator per month, beginning 15 months after award of the LPE Contract and first article approval.  AR at 252.

2012); *see* Pl. Mot.; Pl. Reply; *England v. Sys. Mgmt, Am. Corp.*, 38 F. App'x 567, 571 (Fed. Cir. 2002) (quoting *United States Fidelity & Guaranty Co. v. United States*, 230 Ct. Cl. 355, 366-37 (1982)) ("well-nigh irrefragable proof" [is] needed to overcome the presumption that a government official performs his duties in good faith. . . ."). And so, again, the record evidence shows that Treadwell is unlikely to succeed upon the merits of this claim.

### e. The Record Evidence Shows That The Navy Engaged In Meaningful Discussions With Treadwell

As a final matter, Treadwell's claim that the Navy failed to engage in meaningful discussions regarding the delivery schedule for the LPE Contract also lacks evidentiary support. This Court has long recognized that discussions regarding an offeror's proposal are "meaningful if they generally lead offerors into areas of their proposals requiring amplification or correction, which means that discussions should be as specific as practical considerations permit." *Advanced Data Concepts, Inc. v. United States*, 43 Fed. Cl. 410, 422 (1999) (internal quotations and citations omitted), *aff'd*, 216 F.3d 1054 (Fed. Cir. 2000); *Process Control Techs. v. United States*, 53 Fed. Cl. 71, 81 (2002); *World Travel Serv. v. United States*, 49 Fed. Cl. 431, 439 (2001). But, agencies have no obligation to discuss in detail all inadequate aspects of a proposal with the offeror. *Process Control Techs.*, 53 Fed. Cl. at 81; *see also Labat-Anderson v. United States*, 42 Fed. Cl. 806, 835 (1999). And so, the decision to conduct discussions—and the scope of any such discussions—is left to the judgment of the contracting officer. *World Travel Serv.*, 49 Fed. Cl. at 439; *Process Control Techs.*, 33 Fed. Cl. at 81; *see also* 48 C.F.R. § 15.306(d)(3) ("The scope and extent of discussions are a matter of contracting officer judgment.").

The administrative record in this matter shows that the Navy appropriately engaged in discussions with Treadwell regarding the RFP and that the Navy did not have an obligation to specifically engage in discussions with Treadwell regarding the delivery schedule for the LPE Contract. As discussed above, Treadwell proposed an aggressive delivery schedule for the LPE Contract that exceeded the requirements of the RFP. AR at 197. The RFP specifically authorizes the Navy to award under either the required delivery schedule or the proposed delivery schedule, when an offeror offers an earlier delivery schedule than required. *Id.* And so, the delivery schedule that Treadwell proposed did not raise any concerns based upon the requirements of the RFP. Under such circumstances, the Navy had no obligation to engage in

discussions with Treadwell regarding the delivery schedule that Treadwell proposed for the LPE Contract.  AR at 1126; *World Travel Serv.*, 49 Fed. Cl. at 439.

Because Treadwell has not demonstrated a likelihood of success upon the merits of any of its claims, Treadwell has not met its heavy burden to show that it is entitled to injunctive relief.[9]  *Altana Pharma AG*, 566 F.3d at 1005 (citing *Amazon.com, Inc.,* 239 F.3d at 1350) ("Although the factors are not applied mechanically, a movant must establish the existence of both of the first two factors to be entitled to a preliminary injunction.").  And so, for this reason, the Court must deny Treadwell's motion for a preliminary injunction.[10]  *Id.*

## V.   CONCLUSION

In sum, the administrative record in this matter demonstrates that Treadwell has not met its heavy burden to show that it is entitled to a preliminary injunction.  Rather, the record evidence in this case shows that the Navy's decision to award the LPE Contract to Hamilton was reasonable and in accordance with the terms of the RFP and applicable law.  In addition, the record evidence simply does not substantiate Treadwell's claim that the Navy's subsequent decision to modify the delivery schedule for the LPE Contract was improper, or contrary to the Competition in Contracting Act.

And so, for the foregoing reasons, the Court **DENIES** Treadwell's motion for a preliminary injunction.

---

[9] The Court is unpersuaded by the government's argument that Treadwell could not have been prejudiced by any of the errors that Treadwell alleges in this matter, because of the vast difference in the prices proposed by Treadwell and Hamilton.  While the government correctly observes that Treadwell's proposed price was approximately [***] more than Hamilton's proposed price, Treadwell maintains that Hamilton was ineligible for award of the LPE Contract.  Def. Resp. at 10; AR at 1387.  Because it is undisputed that Treadwell and Hamilton were the only offerors deemed to be technically acceptable for the LPE Contract, Treadwell may be able to show that it had a substantial chance of being awarded the LPE Contract.

[10] While the Court need not reach this issue, the remaining factors that the Court examines when considering a motion for a preliminary injunction also weigh against granting a stay of Hamilton's performance under the LPE Contract.  As the government notes in its opposition to Treadwell's motion for a preliminary injunction, the public has a strong interest in ensuring the readiness of the Navy's submarine fleet, and this significant public interest weighs against staying Hamilton's performance.  Def. Resp. at 30-31.  The balance of hardships similarly weighs against staying performance of the LPE Contract, because such a stay would likely delay the delivery of the LPE production units called for under that contract and significantly harm the Navy.

Some of the information contained in this Memorandum Opinion and Order may be considered protected information subject to the Protective Order entered in this matter on March 2, 2017.  This Memorandum Opinion and Order shall be filed under seal.  The parties shall review the Memorandum Opinion and Order to determine whether, in their view, any information should be redacted in accordance with the terms of the Protective Order prior to publication.  After doing so, the parties shall **FILE** a joint status report identifying the information, if any, that they contend should be redacted, together with an explanation of the basis for each proposed redaction, on or before **August 18, 2017**.

It is further **ORDERED** that the parties shall **FILE** a joint status report advising the Court of their respective views on how this matter should proceed in light of this Memorandum Opinion and Order, on or before **August 31, 2017**.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge