# In the United States Court of Federal Claims

BID PROTEST
No. 17-287C
Filed Under Seal: March 14, 2019
Reissued For Publication: April 12, 2019[*]

| | |
|---|---|
| TREADWELL CORPORATION, )<br><br>        Plaintiff, )<br><br>v. )<br><br>THE UNITED STATES, )<br><br>        Defendant, )<br><br>v. )<br><br>HAMILTON SUNDSTRAND<br>CORPORATION, )<br><br>        Defendant-Intervenor. ) | Post-Award Bid Protest; Permanent<br>Injunction; RCFC 52.1; RCFC 65;<br>Supplementing The Administrative<br>Record; Delivery Schedule; Motion To<br>Strike. |

)
TREADWELL CORPORATION,          )
                                )
        Plaintiff,              )
                                )          Post-Award Bid Protest; Permanent
v.                              )          Injunction; RCFC 52.1; RCFC 65;
                                )          Supplementing The Administrative
THE UNITED STATES,              )          Record; Delivery Schedule; Motion To
                                )          Strike.
        Defendant,              )
                                )
v.                              )
                                )
HAMILTON SUNDSTRAND             )
CORPORATION,                    )
                                )
        Defendant-Intervenor.   )
                                )

*Anthony J. Marchese*, Counsel of Record, *Pamela J. Bethel*, Of Counsel, *Carol L. O'Riordan*, Of Counsel, *Taimur Rabbani*, Of Counsel, O'Riordan Bethel Law Firm LLP, Washington, DC, for plaintiff.

*Sean L. King*, Trial Attorney, *Douglas K. Mickle*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Joseph H. Hunt*, Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC; *Gary M. Saladino*, Of Counsel, *Jonathan D. Pavlovcak*, Of Counsel, United States Department of the Navy, Naval Surface Warfare Center, Philadelphia, PA, for defendant.

*John W. Chierichella*, Attorney of Record, *Keith R. Szeliga*, Of Counsel, *Adam A. Bartolanzo*, Of Counsel, Sheppard Mullin Richter & Hampton LLP, Washington, DC, for defendant-intervenor.

---

[*] This Memorandum Opinion and Order was originally filed under seal on March 14, 2019 (docket entry no. 65). The parties were given an opportunity to advise the Court of their views with respect to what information, if any, should be redacted from the Memorandum Opinion and Order. The parties filed a joint status report on April 11, 2019 (docket entry no. 67) proposing certain agreed-upon redactions and requesting that, in lieu of additional redactions, the Court rephrase certain information. And so, the Court is reissuing its Memorandum Opinion and Order dated March 14, 2019, with the adopted redactions indicated by three consecutive asterisks within brackets ([***]).

<u>**MEMORANDUM OPINION AND ORDER**</u>

<u>GRIGGSBY</u>, Judge

**I.     INTRODUCTION**

Plaintiff, Treadwell Corporation ("Treadwell"), brought this post-award bid protest matter challenging the United States Navy's ("Navy") decision to award a contract for low pressure electrolyzer ("LPE") oxygen-generating systems (the "LPE Contract") to Hamilton Sundstrand Corporation ("Hamilton").  The parties have filed cross-motions for judgment upon the administrative record on the issue of whether the Navy's decision to award the LPE Contract to Hamilton was arbitrary, capricious, or contrary to law, pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC").  Hamilton has also moved to strike certain portions of a declaration filed in support of Treadwell's motion for judgment upon the administrative record and portions of Treadwell's motion.

For the reasons discussed below, the Court:  (1) **DENIES** Treadwell's motion for judgment upon the administrative record; (2) **GRANTS** the government's and Hamilton's respective cross-motions for judgment upon the administrative record; (3) **GRANTS** Hamilton's motion to strike; and (4) **DISMISSES** the complaint.

**II.     FACTUAL AND PROCEDURAL BACKGROUND[1]**

**A.     Factual Background**

Treadwell is an unsuccessful offeror in connection with the solicitation for the LPE Contract.  Compl. at ¶ 7; Pl. Mot. at 3-5.  In this post-award bid protest matter, Treadwell challenges the Navy's decision to award the LPE Contract to Hamilton in connection with the Navy's Solicitation No. N64498-16-R-5003 (the "RFP").  *See* Compl.; *see also* AR Tab 23 at 159.

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the complaint ("Compl."); the second corrected administrative record ("AR"); Treadwell's motion for judgment upon the administrative record ("Pl. Mot."); the government's cross-motion for judgment upon the administrative record and response and opposition to Treadwell's motion for judgment upon the administrative record ("Def. Mot."); and Hamilton's cross-motion for judgment upon the administrative record and response and opposition to Treadwell's motion for judgment upon the administrative record ("Def.-Int. Mot.").  Except where otherwise noted, the facts cited herein are undisputed.

Treadwell alleges in this action that the Navy's decision to award the LPE Contract to Hamilton was unreasonable and contrary to law because: (1) the RFP requires delivery of certain LPE production units within 15 months of contract award; (2) Hamilton's proposal was non-responsive; (3) Hamilton's proposal was technically unacceptable; (4) the Navy engaged in unequal treatment of offerors; and (5) the Navy's post-award modification of the LPE Contract was a material and cardinal change. *See* Pl. Mot. at 16-30. Treadwell further alleges that the Court should enjoin Hamilton from further performance under the LPE Contract because, among other things, Treadwell will be irreparably harmed by Hamilton's continued performance under that contract. *Id*. at 30-35. And so, Treadwell requests that the Court set aside the Navy's decision to award the LPE Contract to Hamilton. *Id.* at 35.

### 1.    The Request For Proposals

As background, the Navy issued a request for proposals to design, manufacture, test and deliver low pressure electrolyzer oxygen-generating systems which involve a self-contained oxygen generator to be used in submarines on December 28, 2015. AR Tab 23 at 159-245; Compl. ¶ 10. The RFP contemplates the award of an indefinite-delivery, indefinite-quantity contract, based upon a lowest-priced, technically acceptable basis. AR Tab 23 at 208-09, 243; Compl. ¶ 12.

The RFP provides that proposals will be evaluated in accordance with an established evaluation plan, which would rate offerors' proposals based upon "Technical Capability, Corporate Experience, and Past Performance, and on an overall basis." AR Tab 23 at 242. With respect to the Technical Capability factor, the RFP provides that "offerors shall furnish information on [their] capability to furnish a Low Pressure Electrolyzer that will meet or exceed all the requirements set forth in the Specification." *Id.* at 234.

### 2.    The First Article Test And Delivery Schedule

The RFP also contains several requirements regarding the delivery schedule for the first article testing unit and the first article test for the low pressure electrolyzer oxygen-generating systems. In this regard, the RFP requires that the awardee of the LPE Contract provide the Navy with a first article testing unit, LPE simulators, and LPE production units. *Id.* at 160-64. The statement of work for the RFP also describes the tests and procedures that the awardee must complete in order for the Navy to approve the first article testing unit. *Id.* at 181-89.

Specifically, the RFP provides for the quality conformance and visual inspections, as well as the various testing requirements associated with first article testing—such as an endurance test, a vibration test and a shock test.  *Id.*  In addition, the RFP incorporates Federal Acquisition Regulation ("FAR") 52.209-3, which provides, in relevant part, that:

> Before first article approval, the acquisition of materials or components for, or the commencement of production of, the balance of the contract quantity is at the sole risk of the Contractor.  Before first article approval, the costs thereof shall not be allocable to this contract for (1) progress payments, or (2) termination settlements if the contract is terminated for the convenience of the Government.

*Id.* at 207 (quoting 48 C.F.R. § 52.209-3(g)); *see also* AR Tab 28 at 353.

The prescriptive language for the aforementioned FAR clause provides that:

> Before first article approval, the acquisition of materials or components, or commencement of production, is normally at the sole risk of the contractor. To minimize this risk, the contracting officer shall provide sufficient time in the delivery schedule for acquisition of materials and components, and for production after receipt of first article approval.  When Government requirements preclude this action, the contracting officer may, before approval of the first article, authorize the contractor to acquire specific materials or components or commence production to the extent essential to meet the delivery schedule (see Alternate II of the clause at 52.209–3, First Article Approval—Contractor Testing, and Alternate II of the clause at 52.209–4, First Article Approval—Government Testing. Costs incurred based on this authorization are allocable to the contract for (1) progress payments and (2) termination settlements if the contract is terminated for the convenience of the Government.

48 C.F.R. § 9.305.  Lastly, the RFP requires that the awardee deliver the first article testing unit "15 months after award of delivery order."  AR Tab 25 at 252.

The RFP also contains several provisions relevant to the delivery schedule for the LPE simulators and LPE production units.  AR Tab 23 at 197-98.  In this regard, the RFP provides that:

> Any supplies and services to be furnished under this contract shall be ordered by issuance of delivery orders or task orders by the individuals or activities designated in the Schedule.  Such orders may be issued from date of contract award through 60 months thereafter.

*Id.* at 208.

The delivery schedule in the RFP also provides that:

> 52.211-8.       TIME OF DELIVERY (JUN 1997)
>
> (a) The Government requires delivery to be made according to the following schedule:
>
> REQUIRED DELIVERY SCHEDULE
>
> DELIVERY INFORMATION
> Delivery shall be specified in individual delivery orders.  Delivery of LPE units is to be made at a rate of one (1) LPE per month beginning fifteen (15) months after receipt of each individual order.  Delivery of LPE Simulator is the [sic] made at a rate of one (1) LPE Simulator per month beginning fifteen (15) months after receipt of each individual order. . . .
>
> Offers that propose delivery that will not clearly fall within the applicable required delivery period specified above, will be considered nonresponsive and rejected.

*Id.* at 197; *see also* AR Tab 25 at 252.

Lastly, the RFP provides that "the technical proposal shall be so specific, detailed and complete as to clearly and fully demonstrate that the prospective contractor has a thorough understanding of the technical requirements . . . of this solicitation."  AR Tab 26 at 313.  In this regard, the RFP also provides that the "LPE delivery schedule shall be included in the technical proposal" and that:

> The Government will evaluate equally, as regards time of delivery, offers that propose delivery of each quantity within the applicable delivery period specified above.  Offers that propose delivery that will not clearly fall within the applicable required delivery period specified above, will be considered nonresponsive and rejected.

*Id.*; AR Tab 23 at 197.  In addition, the RFP provides that "[i]f the offeror proposes no other delivery schedule, the required delivery schedule above will apply."  AR Tab 23 at 197.  And so, the RFP provides that the completion and submission of the award documents "will constitute an offer (proposal) and will be considered the offeror's unconditional assent to the terms and conditions of this solicitation and any attachments and/or exhibits hereto."  *Id.* at 233.

### 3.       Evaluation Of Proposals

Prior to the submission of its initial proposal, Treadwell requested that the Navy change the due date for the delivery of the first article testing unit under the RFP to six months after

receipt of contract award. AR Tab 25 at 252. Treadwell also requested that the Navy change the due date for the delivery of the LPE production units and LPE simulators to one unit per month, beginning fifteen months after receipt of the LPE Contract and first article testing unit approval. *Id*. On January 28, 2016, the Navy rejected Treadwell's request and responded that:

> The delivery schedule for the production units remains unchanged. The delivery schedule for the [first article testing] unit is 15 months after award of delivery order. Simulators are also to be delivered 1 per month beginning 15 months after award of delivery order.

*Id*.

Treadwell and Hamilton timely submitted initial proposals in response to the RFP in February 2016. *See generally* AR Tab 32; AR Tab 34. Treadwell's initial proposal was the only proposal that the Navy deemed to be technically acceptable. Compl. ¶¶ 36, 85; AR Tab 38 at 907-16.[2]

Following the receipt of these initial proposals, the Navy conducted an evaluation under the RFP's Technical Capability, Corporate Experience and Past Performance Factors. AR Tab 38 at 907-09, 915-16. On April 11, 2016, the Navy sent letters to Hamilton and Treadwell notifying the offerors of any issues with respect to the initial proposals and providing an opportunity for the offerors to submit revised proposals. AR Tab 39 at 917-18, 923-24.

On May 16, 2016, Treadwell submitted a revised proposal which set forth the following delivery schedule for the first article testing unit, LPE simulators, and LPE production units:

- The delivery schedule for all CLINs will be in full compliance with Amendment 0002 of [the RFP].
- LPE Production units (CLINs 0003 – 0007) will be delivered at a rate of one (1) per month beginning fifteen (15) months after receipt of each individual order.
- LPE Simulators (CLINs 0008 & 0009) will be delivered at a rate of one (1) per month beginning fifteen (15) months after receipt of each individual order.

---

[2] In the cover letter to its initial proposal, Treadwell states that:

> The solicitation requires that the contractor be able to complete First Article Test, one production unit and one simulator within fifteen MARC [months after receipt of contract]. These three simultaneous requirements can only be accomplished within fifteen months by a contractor that has already completed LPE design, First Article testing and simulator design.

AR Tab 34 at 659.

- The LPE First Article Test (CLIN 0001) and Test Report (CLIN 0002) will be completed and delivered no later than fifteen (15) months after award of delivery order.

AR Tab 43 at 1126.

Hamilton submitted its revised proposal on May 17, 2016. *See generally* AR Tab 42. Hamilton's revised proposal proposes a schedule for qualification of fifteen months, meaning that Hamilton planned to complete first article testing unit approval within fifteen months of contract award. *Id.* at 1009. Hamilton does not otherwise address the delivery schedule in its revised proposal. *See generally id.* at 941-1013.

Following the evaluation of revised proposals, the Navy deemed the revised proposals submitted by Treadwell and Hamilton to be technically acceptable. AR Tab 44 at 1140-41. And so, on May 27, 2016, the Navy sent Treadwell and Hamilton letters affording both offerors the opportunity to submit final proposal revisions. AR Tab 45 at 1142; AR Tab 46 at 1152-53.

Treadwell submitted its final proposal revision on June 2, 2016. *See generally* AR Tab 49. In its final proposal revision, Treadwell states that "[t]he solicitation requires that the contractor be able to complete First Article Test, one production unit and one simulator within fifteen [months after receipt of contract]." *Id.* at 1341. In addition, Treadwell's final proposal revision proposes a price of [***]. *Id.* at 1345.

Hamilton submitted its final proposal revision on June 3, 2016. *See generally* AR Tab 48. In its final proposal revision, Hamilton states that its "proposed schedule for Qualification is fifteen (15) months . . . ." AR Tab 48 at 1321. In the technical proposal volume of its final proposal revision, Hamilton also provides a delivery schedule for the first article testing unit. *Id.* (providing a timeline for design, procurement, assembly, grooming, qualification testing, and shock testing). Hamilton does not otherwise address the delivery schedule in its final proposal revision. *See generally id.* at 1165-1338. But, Hamilton's final proposal revision incorporates the RFP's delivery schedule and states that Hamilton "is agreeable to the terms, conditions, and provisions included in the solicitation . . . ." *Id.* at 1166, 1215. In addition, Hamilton's final proposal revision proposes a price of $42,782,640.00—approximately [***] less than Treadwell's final proposed price. AR Tab 51 at 1373.

### 4.      Award To Hamilton

The Navy deemed the final proposal revisions from Treadwell and Hamilton to be technically acceptable. *Id.* at 1369-71.  And so, on July 13, 2016, the Navy awarded the LPE Contract to Hamilton, based upon the agency's determination that Hamilton submitted the lowest-priced, technically acceptable proposal.  *See generally* AR Tab 54.

### 5.      Post-Award Contract Modifications

On July 13, 2016, the Navy issued Delivery Order 0001 to Hamilton requesting the delivery of the first article testing unit and two LPE production units.  *See generally* AR Tab 55. The delivery order states in a note that "[p]roduction units shall not be delivered until after Approval of First Article."  *Id.* at 1465.

On September 13, 2016, Hamilton responded to the Navy's delivery order by stating that:

> [W]e were not aware or had planned financially to be supporting a parallel production procurement during the design & development effort.  We are happy to support this additional opportunity but if qualification issues arise that require system/hardware changes UTAS would have to support.  This additional risk was not anticipated.

AR Tab 64 at 1669.

On November 2, 2016, the Navy issued a modification to the LPE Contract which extended the original delivery deadline for the two requested LPE production units from October 13, 2017, to November 30, 2018, and clarified that the deadline for delivery of the LPE production units would be 12 months after first article testing unit approval.  AR Tab 61 at 1541, 1545.27.

### 6.      The Court's July 19, 2017, Decision

After Treadwell commenced this post-award bid protest action, the Court issued a memorandum opinion and order denying Treadwell's motion for a preliminary injunction on July 19, 2017 (the "July 19, 2017, Decision").  *See generally Treadwell Corp. v. United States*, 133 Fed. Cl. 371 (2017).  In the July 19, 2017, Decision, the Court held that Treadwell did not meet its heavy burden to show that it is entitled to emergency injunctive relief in this matter, because, among other reasons, the administrative record shows that the Navy's decision to award the LPE

Contract to Hamilton was reasonable and in accordance with the terms of the RFP and applicable law. *Id.* at 389.

Specifically relevant to the parties' cross-motion for judgment upon the administrative record, the Court held in the July 19, 2017, Decision that Treadwell's claims that Hamilton's proposal was unresponsive and technically unacceptable are unsubstantiated by the record evidence, because the RFP contemplates the approval of the first article testing unit before the LPE production units or the LPE simulators are to be delivered to the Navy. *Id.* at 383-86; *see generally* AR Tabs 23-30. In this regard, the Court observed that the RFP incorporates FAR 52.209-3, which warns potential contractors that starting production of deliverables under a government contract prior to first article testing unit approval would be at the sole risk of the contractor. *Treadwell Corp.*, 133 Fed. Cl. at 384; *see also* AR Tab 23 at 207; AR Tab 28 at 352-53. And so, the Court concluded that the RFP for the LPE Contract requires that the Navy approve the first article testing unit prior to the delivery of the LPE production units and LPE simulators to the Navy. *Treadwell Corp.*, 133 Fed. Cl. at 385.

The Court also rejected Treadwell's argument that Hamilton's proposal was not technically acceptable, because Hamilton did not demonstrate that it could meet the RFP's delivery schedule. *Id.* at 386. Specifically, the Court found that the administrative record shows that the Navy reasonably determined that Hamilton was technically capable of meeting the delivery schedule called for under the RFP and that Hamilton expressly committed to the RFP's delivery schedule in its final proposal revision. *Id.*; *see also* AR Tab 23 at 197; AR Tab 48 at 1166.

In addition, the Court held that Treadwell's unequal treatment claim was not substantiated by the administrative record, because the RFP did not require that Hamilton meet the aggressive delivery schedule that Treadwell proposed in its own proposal. *Treadwell Corp.*, 133 Fed. Cl. at 386. In this regard, the Court determined that the administrative record shows that the Navy equally evaluated the proposals submitted by Treadwell and Hamilton, based upon the evaluation factors set forth in the RFP. *Id.*; *see also* AR Tab 23 at 242; AR Tab 38 at 907-16; AR Tab 44 at 1140-41; AR Tab 51 at 1369-71. The Court also determined that the record evidence shows that the Navy's November 2, 2016, modification of the LPE Contract was not a cardinal or material change, because this modification fell within the scope of the

original procurement for the LPE Contract. *Id.* at 387-88, n.8. And so, the Court concluded that Treadwell failed to demonstrate a likelihood of success upon the merits of any of its claims, and, as a result, Treadwell was not entitled to preliminary injunctive relief. *Id.* at 389.[3]

After the Court issued the July 19, 2017, Decision, Treadwell filed an interlocutory appeal of the decision to the United States Court of Appeals for the Federal Circuit. Notice of Appeal, dated Sept. 8, 2017. On June 13, 2018, the Federal Circuit issued a per curiam opinion affirming the Court's July 19, 2017, Decision. *See generally Treadwell Corp. v. United States*, 726 F. App'x 826 (Fed. Cir. 2018) (per curiam).

##### B.  Procedural Background

Treadwell commenced this post-award bid protest action on March 1, 2017. *See generally* Compl. On March 1, 2017, Treadwell filed a motion for a preliminary injunction and a memorandum in support thereof. *See generally* Pl. Mot. for Prelim. Inj.; Pl. Mem.

On March 23, 2017, the government filed the administrative record. *See generally* Initial AR. On March 31, 2017, the government filed a corrected administrative record. *See* Notice, Mar. 31, 2017. On April 5, 2017, the government filed a second corrected administrative record. *See generally* AR.

After the parties fully briefed Treadwell's motion for a preliminary injunction, the Court issued a memorandum opinion and order denying Treadwell's motion on July 19, 2017. *See generally Treadwell Corp.*, 133 Fed. Cl. at 371-89. Following Treadwell's interlocutory appeal of the July 19, 2017, Decision, the Federal Circuit issued a per curiam opinion affirming the Court's July 19, 2017, Decision on June 13, 2018. *See generally Treadwell Corp.*, 726 F. App'x at 826-27.

On September 19, 2018, Treadwell filed a motion for judgment upon the administrative record. *See generally* Pl. Mot. On October 31, 2018, the government and Hamilton filed their respective responses and oppositions to Treadwell's motion for judgment upon the administrative record and cross-motions for judgment upon the administrative record. *See*

---

[3] The Court also held that Treadwell's claims that the Navy awarded the LPE Contract with the intent to modify and that the Navy failed to engage in meaningful discussions were unsubstantiated by the record evidence. *Treadwell Corp. v. United States*, 133 Fed. Cl. 371, 388-89 (2017).

*generally* Def. Mot.; Def.-Int. Mot.  On October 31, 2018, Hamilton filed a motion to strike paragraphs 2, 4, 5, 6, and 7 of the Declaration of Robert Johnson and certain portions of Treadwell's motion for judgment upon the administrative record.  *See generally* Def.-Int. Mot. at 37-41.

On November 30, 2018, Treadwell filed a response and opposition to the government's and Hamilton's respective cross-motions for judgment upon the administrative record, a response to Hamilton's motion to strike, and a reply in support of its motion for judgment upon the administrative record.  *See generally* Pl. Resp.  On December 14, 2018, the government and Hamilton filed their respective reply briefs.  *See generally* Def. Reply; Def.-Int. Reply.

These matters having been fully briefed, the Court resolves the pending motions.

## III.   LEGAL STANDARDS

### A.   Jurisdiction And Bid Protests

The Tucker Act grants the United States Court of Federal Claims jurisdiction over bid protests brought by "an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1).  In bid protest cases, this Court reviews agency actions under the Administrative Procedure Act's ("APA") "arbitrary and capricious" standard.  *See* 28 U.S.C. § 1491(b)(4) (adopting the standard of review set forth in the Administrative Procedure Act).  And so, under the APA's standard, an award may be set aside if, "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).  The United States Court of Appeals for the Federal Circuit has also recognized that:

> When a challenge is brought on the first ground, the test is whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a "heavy burden" of showing that the award decision had no rational basis.  When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.

*Id.* (citations omitted).

In reviewing an agency's procurement decision, the Court should recognize that the agency's decision is entitled to a "presumption of regularity." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971) (citations omitted), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). And so, the Court should not substitute its judgment for that of the agency. *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997). In addition, "[t]he protestor must show, by a preponderance of the evidence, that the agency's actions were either without a reasonable basis or in violation of applicable procurement law" or procedure. *Info. Tech. & Applications Corp. v. United States*, 51 Fed. Cl. 340, 346 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003); *see also Bannum, Inc. v. United States*, 60 Fed. Cl. 718, 723 (2004); *Gentex Corp. v. United States*, 58 Fed. Cl. 634, 648 (2003). This standard "is highly deferential" and "requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000) (citing *Bowman Transp., Inc. v. Ark.–Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974)).

In this regard, the Federal Circuit has held that, as long as there is "a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion . . . ." *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (citations omitted). But, the Federal Circuit has also recognized that, if "the agency 'entirely fail[s] to consider an important aspect of the problem [or] offer[s] an explanation for its decision that runs counter to the evidence before the agency,'" then the resulting action lacks a rational basis and is, therefore, defined as arbitrary and capricious. *Ala. Aircraft Indus., Inc.–Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

**B.     Injunctive Relief And RCFC 65**

Under its bid protest jurisdiction, the Court "may award any relief that [it] considers proper, including declaratory and injunctive relief." 28 U.S.C. 1491(b)(2); *see also Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009). In deciding whether to issue a permanent injunction, the Court "considers: (1) whether . . . the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds

12

injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief." *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citing *Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."); *see also Centech Grp., Inc.*, 554 F.3d at 1037. In this regard the Federal Circuit has held that:

> No one factor, taken individually, is necessarily dispositive. If a preliminary injunction is granted by the trial court, the weakness of the showing regarding one factor may be overborne by the strength of the others. If the injunction is denied, the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial.

*FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993) (citations omitted).

A plaintiff who cannot demonstrate actual success upon the merits cannot prevail upon a motion for injunctive relief. *Cf. Nat'l Steel Car, Ltd. v. Canadian Pacific Ry., Ltd.*, 357 F.3d 1319, 1325 (Fed. Cir. 2004) (finding that a plaintiff who cannot demonstrate likely success upon the merits cannot prevail upon its motion for preliminary injunctive relief). This Court has also found success upon the merits to be "the most important factor for a court to consider when deciding whether to issue injunctive relief." *Dellew Corp. v. United States*, 108 Fed. Cl. 357, 369 (2012) (citing *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1312 (Fed. Cir. 2007)). But, while success upon the merits is necessary, it is not sufficient alone for a plaintiff to establish that it is entitled to injunctive relief. *See Contracting, Consulting, Eng'g LLC v. United States*, 104 Fed. Cl. 334, 353 (2012) (("Although plaintiff's entitlement to injunctive relief depends on its succeeding on the merits, it is not determinative because the three equitable factors must be considered, as well.") (citations omitted)).

### C. Supplementing The Administrative Record

Lastly, the Federal Circuit held in *Axiom Resource Management*, that the "parties' ability to supplement the administrative record is limited" and that the administrative record should only be supplemented "if the existing record is insufficient to permit meaningful review consistent with the APA." *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379-81 (Fed. Cir. 2009); *see also Caddell Constr. Co., Inc. v. United States*, 111 Fed. Cl. 49, 93 (2013). The

Federal Circuit also recognized that, in *Camp v. Pitts*, the Supreme Court held that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Axiom*, 564 F.3d at 1379 (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)).

This Court has interpreted the Federal Circuit's directive in *Axiom* to mean that supplementation of the administrative record is permitted to correct mistakes and fill gaps, but supplementation is not permitted when the documents proffered are unnecessary for an effective review of the government's procurement decision. *L-3 Commc'ns EOTech, Inc. v. United States*, 87 Fed. Cl. 656, 672 (2009). And so, this Court has precluded supplementation of the administrative record with declarations that contain "post-hoc contentions of fact and argument." *Id.* But, the Court has also held that "it is appropriate to add evidence pertaining to prejudice and the factors governing injunctive relief to the record in a bid protest—not as a supplement to the AR, but as part of this Court's record." *AshBritt, Inc. v. United States*, 87 Fed. Cl. 344, 366-67 (2009).

## IV.    LEGAL ANALYSIS

The parties have filed cross-motions for judgment upon the administrative record on the issue of whether the Navy's decision to award the LPE Contract to Hamilton was arbitrary, capricious, or contrary to law, pursuant to RCFC 52.1.

In its motion for judgment upon the administrative record, Treadwell alleges that the Navy's decision to award the LPE Contract to Hamilton was unreasonable and contrary to law for five reasons—namely, because: (1) the RFP requires delivery of the LPE production units within 15 months of contract award; (2) Hamilton's proposal was non-responsive; (3) Hamilton's proposal was technically unacceptable; (4) the Navy engaged in unequal treatment of offerors; and (5) the Navy's post-award modification of the LPE Contract was a material and cardinal change. *See* Pl. Mot. at 16-30. Treadwell further alleges that the Court should enjoin Hamilton from further performance under the LPE Contract because, among other things, Treadwell will be irreparably harmed by Hamilton's continued performance under that contract. *Id.* at 30-35.

The government and Hamilton counter in their respective cross-motions for judgment upon the administrative record that the Navy's decision to award the LPE Contract to Hamilton was reasonable and in accordance with the requirements of the RFP and applicable law because:

(1) the RFP does not require delivery of the LPE production units within 15 months of contract award; (2) the Navy evaluated responsive proposals in accordance with the requirements of the RFP; and (3) the Navy's post-award modification of the LPE Contract was not a cardinal or material change. *See* Def. Mot. at 8-20; Def.-Int. Mot. at 16-30. Hamilton has also moved to strike certain portions of the Declaration of Robert Johnson, which Treadwell has filed in support of its motion for judgment upon the administrative record, and certain portions of Treadwell's motion, upon the ground that Treadwell seeks to improperly supplement the administrative record with this information. Def.-Int. Mot. at 37-41.

For the reasons discussed below, the record evidence in this matter does not substantiate any of Treadwell's challenges to the Navy's decision to award the LPE Contract to Hamilton. In addition, Hamilton correctly argues that certain information contained in the Declaration of Robert Johnson is not properly before the Court. And so, the Court: (1) **DENIES** Treadwell's motion for judgment upon the administrative record; (2) **GRANTS** the government's and Hamilton's respective cross-motions for judgment upon the administrative record; (3) **GRANTS** Hamilton's motion to strike; and (4) **DISMISSES** the complaint.

### A.    The Court Grants Hamilton's Motion To Strike

As an initial matter, the Court must grant Hamilton's motion to strike certain paragraphs contained in the declaration submitted by Treadwell's chief operating officer, Robert Johnson (the "Johnson Declaration"), because this declaration contains information that is not included in the administrative record. A careful review of the Johnson Declaration shows that paragraphs 2, 4, 5, 6, and 7 of the declaration address certain meetings and discussions that Treadwell alleges occurred between the company and the Navy during the procurement process for the LPE Contract. Johnson Decl. at ¶¶ 2, 4-7. Other paragraphs in this declaration address the harm that Treadwell will allegedly suffer if the Court declines to award Treadwell injunctive relief. *Id.* at ¶¶ 8-18.

To the extent that Treadwell seeks to supplement the administrative record with information regarding meetings and discussions that Treadwell held with the Navy, the Court must disregard this information. This Court has held that it may consider information that is not contained in the administrative record as part of the Court record in a bid protest dispute, if the information pertains to the factors that the Court weighs in deciding whether to grant injunctive

relief.  *See, e.g.*, *AshBritt, Inc. v. United States*, 87 Fed. Cl. 344, 366-67 (2009) ("In general, it is appropriate to add evidence pertaining to prejudice and the factors governing injunctive relief to the record in a bid protest—not as a supplement to the AR, but as part of this Court's record."). But, as Hamilton correctly argues in its motion to strike, paragraphs 2, 4, 5, 6, and 7 of the Johnson Declaration address the merits of Treadwell's claims and contain information that is not included in the existing administrative record.  Def.-Int. Mot. at 37-41.  The government has filed a comprehensive administrative record in this matter, and the disputed paragraphs of the Johnson Declaration neither correct, nor fill any gaps in the administrative record.  *See* Initial AR; Notice, Mar. 31, 2017; *see generally* AR.  Given this, the Court concurs with Hamilton that certain portions of the Johnson Declaration are not properly before the Court.  And so, the Court **GRANTS** Hamilton's motion to strike.

### B.    Treadwell's Claims Are Unsubstantiated By The Record Evidence

#### 1.    The RFP Does Not Require Delivery Within 15 Months Of Contract Award

With respect to the merits of Treadwell's claims, the administrative record does not support the premise of this bid protest dispute—that the RFP requires delivery of the LPE production units to the Navy within 15 months of the award of the LPE Contract.  Pl. Mot. at 16-21.  Rather, a plain reading of the RFP makes clear that the RFP contemplates the approval of the first article testing unit before LPE production units (or the LPE simulators) are to be delivered to the Navy.  *See generally* AR Tabs 23-30.  And so, Treadwell cannot prevail in this bid protest dispute.

As the Court held in the July 19, 2017, Decision, the Court must read the RFP's delivery schedule requirements within the context of federal procurement regulations that are applicable to the LPE Contract.  *Essex Electro Eng'rs, Inc. v. United States*, 702 F.2d 998, 1002 (Fed. Cir. 1983) (explaining that a contract provision cannot "be interpreted to override the applicable regulations"); *Treadwell Corp.*, 133 Fed. Cl. at 383-86.  These regulations make clear that the Navy has discretion regarding when to issue delivery orders under the LPE Contract, provided that the Navy allows for sufficient time in the delivery schedule for the acquisition of materials and production after the approval of the first article unit.  48 C.F.R. §§ 9.305, 52.209-3.

Notably, the RFP incorporates FAR 52.209-3, which warns potential contractors that starting production of deliverables under a government contract prior to first article testing unit approval would be at the sole risk of the contractor.  AR Tab 23 at 207; AR Tab 28 at 352-53.  In this regard, FAR 52.209-3 provides that:

> Before first article approval, the acquisition of materials or components for, or the commencement of production of, the balance of the contract quantity is at the sole risk of the Contractor.  Before first article approval, the costs thereof shall not be allocable to this contract for (1) progress payments, or (2) termination settlements if the contract is terminated for the convenience of the Government.

AR Tab 23 at 207; AR Tab 28 at 352-53; *see also* 48 C.F.R. § 52.209-3(g).  And so, this regulation makes clear that Hamilton assumes the financial risk of starting the production of the LPE production units (or LPE simulators) prior to the approval of the first article testing unit.  48 C.F.R. § 52.209-3(g).

The Court's reading of the RFP to require the approval of the first article testing unit prior to the delivery of the LPE production units (or LPE simulators) is also reinforced by the requirements of FAR 9.305, which provides, in relevant part, that:

> Before first article approval, the acquisition of materials or components, or commencement of production, is normally at the sole risk of the contractor.  To minimize this risk, the contracting officer shall provide sufficient time in the delivery schedule for acquisition of materials and components, and for production after receipt of first article approval.  When Government requirements preclude this action, the contracting officer may, before approval of the first article, authorize the contractor to acquire specific materials or components or commence production to the extent essential to meet the delivery schedule (see Alternate II of the clause at 52.209–3, First Article Approval—Contractor Testing, and Alternate II of the clause at 52.209–4, First Article Approval—Government Testing. Costs incurred based on this authorization are allocable to the contract for (1) progress payments and (2) termination settlements if the contract is terminated for the convenience of the Government.

48 C.F.R. § 9.305.[4]  And so, when read in light of FAR 9.305 and 52.209-3, the RFP requires that the Navy provide sufficient time in the delivery schedule for, among other things, production

---

[4] In addition, FAR 52.101(c) provides that:

> (c) Prescriptions. Each provision or clause in subpart 52.2 is prescribed at that place in the FAR text where the subject matter of the provision or clause receives its primary treatment. The prescription includes all conditions, requirements, and instructions for using the

of the LPE production units (or LPE simulators) following the first article approval.  AR Tab 23 at 207.

Treadwell's reliance upon the delivery schedule in the RFP to argue that Hamilton must deliver the LPE production units within 15 months of the award of the LPE Contract is also misplaced.  Section F of the RFP provides that:

> Delivery of LPE units is to be made at a rate of one (1) LPE per month beginning fifteen (15) months after receipt of each individual order.  Delivery of LPE Simulator is the [sic] made at a rate of one (1) LPE Simulator per month beginning fifteen (15) months after receipt of each individual order.

AR Tab 23 at 197.  As Treadwell correctly observes, this delivery schedule requires that Hamilton deliver the LPE production units (or LPE simulators) beginning 15 months after receipt of a delivery order.  *See* Pl. Mot. at 16.  But, this schedule does not require that the LPE production units be delivered within 15 months of contract award as Treadwell suggests.  *See id.*

To the contrary, when read in light of FAR 52.209.3 and 9.305, the RFP's delivery schedule clearly requires that "the contracting officer shall provide sufficient time in the delivery schedule for acquisition of materials and components, and for production after receipt of first article approval."  48 C.F.R. § 9.305.  And so, as discussed above, the RFP's delivery schedule simply does not mandate that Hamilton deliver the LPE production units (or LPE simulators) before receipt of first article approval.

Treadwell's reliance upon the RFP's order of precedence clause to show that the LPE production units must be delivered to the Navy within 15 months of contract award is equally misplaced.  Treadwell argues in its motion for judgment upon the administrative record that the FAR 52.215-8 Order of Precedence—Uniform Contract Formation Clause, which is incorporated by reference into the RFP, requires that the Navy give precedence to the delivery schedule set forth in the RFP over any inconsistent requirements set forth in FAR 52.209-3 and 9.305.  Pl. Mot. at 17; *see* AR Tab 23 at 204.  But, to the extent that there is any conflict or inconsistency

---

provision or clause and its alternates, if any.  The provision or clause may be referred to in other FAR locations.

48 C.F.R. § 52.101(c).

between the FAR and the RFP's delivery schedule, the RFP's order of precedence clause is not intended to resolve that conflict.

Notably, the order of precedence clause provides that:

*Any inconsistency in this solicitation* . . . shall be resolved by giving precedence in the following order:

(a) The Schedule (excluding the specifications).

(b) Representations and other instructions.

(c) Contract clauses.

(d) Other documents, exhibits, and attachments.

(e) The specifications.

48 C.F.R. § 52.215-8 (emphasis supplied); *see also* AR Tab 23 at 204.  The purpose of this clause is to harmonize internal conflicts within the provisions of the RFP, rather than to resolve any conflicts between the terms of the RFP and federal procurement regulations.  48 C.F.R. § 52.215-8; *Apollo Sheet Metal, Inc. v. United States*, 44 Fed. Cl. 210, 214 (1999) ("One thus looks to the order of precedence clause to resolve inconsistencies between specific terms in competing clauses of like provision . . . ."); *see also Sperry Corp. v. United States*, 845 F.2d 965, 968 (Fed. Cir. 1988).  And so, the RFP's order of precedence clause does not support Treadwell's claim.

### 2.   Treadwell Has Not Shown That Hamilton's Proposal Was Unresponsive Or Technically Unacceptable

Because the Court does not read the RFP to require the delivery of the LPE production units within 15 months of the award of the LPE Contract, Treadwell's claims that Hamilton's proposal was unresponsive and technically unacceptable are also belied by the record evidence. Pl. Mot. at 21-24.  Treadwell argues in its motion for judgment upon the administrative record, that Hamilton's proposal was not responsive to the RFP because Hamilton did not include a delivery schedule for the LPE production units in its technical proposal.  *Id.* at 21.  But, the record evidence in this matter makes clear that the Navy reasonably determined that Hamilton could meet the RFP's delivery schedule requirements for several reasons.

First, a careful review of the administrative record shows that Hamilton committed to meeting the RFP's delivery schedule in the final proposal revision submitted to the Navy on June

3, 2016.  AR Tab 48 at 1215; *see also* AR Tab 23 at 197.  Specifically, the administrative record shows that Hamilton included the RFP's delivery schedule in volume one of its final proposal revision.  AR Tab 48 at 1215.  Hamilton also states in the cover letter to its final proposal revision that it "is agreeable to the terms, conditions, and provisions included in the solicitation." *Id*. at 1166.  Hamilton's representation is notable because the RFP provides that "[i]f the offeror proposes no other delivery schedule, the required delivery schedule" will apply.  AR Tab 23 at 197.

Treadwell also fails to explain why the fact that Hamilton did not include a delivery schedule specifically for the LPE production units in the technical volume of its final proposal revision renders Hamilton's proposal technically unacceptable.  While the RFP does require that Hamilton provide an LPE delivery schedule in its technical proposal, Treadwell points to no provision in the RFP that would specifically require Hamilton to include a delivery schedule for the *LPE production units* in the technical portion of the final proposal revision.  *See* Pl. Mot. at 21-23, 29-30; Pl. Resp. at 11-15; *see also* AR Tab 26 at 313.  Indeed, as the administrative record makes clear, Hamilton's final proposal revision provides a schedule for the delivery of the first article testing unit within 15 months of contract award and states that, thereafter, it will begin production of the LPE simulators and LPE production units—as required by the RFP.  AR Tab 48 at 1215, 1321; *see also* AR Tab 64 at 1669.  Hamilton also provides a qualification delivery schedule for the first article unit in its technical proposal.  AR Tab 48 at 1321.  Given this, the record evidence in this matter shows that the Navy reasonably determined that Hamilton's final proposal revision was technically acceptable and responsive to the RFP.[5]

---

[5] Treadwell's reliance upon the United States Government Accountability Office's ("GAO") decision in *Alerting Communicators of America*, B-236253, 89-2 CPD ¶ 438 (Comp. Gen. Nov. 7, 1989), is also misplaced.  Pl. Mot. at 22-23.  In that case, the GAO determined that the government properly concluded that the protestor's bid was unresponsive because the bid did not commit to the delivery schedule set forth in the invitation for bids.  *Alerting Communicators of Am.*, B-236253, 89-2 CPD ¶ 438, at *1 (Comp. Gen. Nov. 7, 1989).  But, in this case, the administrative record shows Hamilton did agree to meet the RFP's delivery schedule—delivery of the LPE production units and LPE simulators after approval of the first article testing unit and beginning 15 months after the receipt of a delivery order.  AR Tab 48 at 1166, 1215.  And so, *Alerting Communicators* does not support Treadwell's claims.

### 3.      Treadwell's Unequal Treatment Claim Is Unsubstantiated

Treadwell also fails to show that the Navy treated offerors unequally with respect to the RFP's delivery schedule requirements.  In its motion for judgment upon the administrative record, Treadwell argues that the Navy's decision to issue a post-award modification to the LPE Contract on November 2, 2016, granted "Hamilton the same schedule relief [that the Navy previously] denied Treadwell," resulting in unequal treatment.  Pl. Mot. at 25.  Treadwell's claim lacks evidentiary support.

Contrary to Treadwell's claims, the administrative record shows that the intent of the Navy's November 2, 2016, contract modification was to clarify the due date for the delivery of the first LPE production units under the LPE Contract, and that this modification did not result in the unequal treatment of offerors.  Specifically, the record evidence shows that the Navy's post-award contract modification extends the delivery deadline for the first two LPE production units due under the LPE Contract from October 13, 2017, to November 30, 2018, and that this modification also clarifies that the delivery deadline for the LPE production units would be 12 months after approval of the first article testing unit.  AR Tab 55 at 1463-94; AR Tab 61 at 1513-45, 1545.27; AR Tab 64 at 1669.  As the government explains in its cross-motion, the Navy's contract modification was necessary because the Navy issued a delivery order for the first LPE production units "sooner than anticipated," due to budgetary concerns.  Def. Mot. at 16; AR Tab 61 at 1541.

The government also acknowledges that the Navy's delivery order did not ensure that Hamilton would have sufficient time to comply with the RFP's delivery schedule after first article testing approval, as required by the RFP and FAR 9.305 and 52.209-3.  Def. Mot. at 6, 16; *see also* AR Tab 55 at 1493.  Given this acknowledged error on the part of the Navy, the record evidence supports the government's position that the purpose of the Navy's November 2, 2016, contract modification was to correct an error, rather than to grant relief previously denied to Treadwell.  *See* AR Tab 23 at 207; AR Tab 25 at 252; AR Tab 27 at 347; AR Tab 28 at 352-53.

### 4.      The Navy's Contract Modification Was Not A Cardinal Change

Treadwell also fails to show that the Navy's November 2, 2016, post-award contract modification constitutes a material or cardinal change.  Treadwell argues that the Navy's contract modification was a cardinal or material change—warranting re-competition of the LPE

Contract—because Treadwell could not have reasonably anticipated that the Navy would modify the LPE Contract to clarify the delivery due date for the LPE production units. Pl. Mot. at 26-28; *see generally* AR Tab 55; AR Tab 61. But, as the Court held in the July 19, 2017, Decision, the administrative record shows that the Navy's contract modification falls well within the scope of the original procurement for the LPE Contract. *AT&T Communications, Inc. v. Wiltel, Inc.*, 1 F.3d 1201, 1204-05 (Fed. Cir. 1993) (holding that "'a cardinal change . . . occurs when the government effects an alteration in the work so drastic that it effectively requires the contractor to perform duties materially different from those originally bargained for'") (quoting *Allied Materials & Equip. Co. v. United States*, 569 F.2d 562, 563-64 (1978)); *Treadwell Corp.*, 133 Fed. Cl. at 387

As discussed above, the Navy's contract modification simply clarifies the delivery due date for the LPE production units, thereby making clear that delivery of these units would not occur until after the approval of the first article testing unit. *See generally* AR Tab 55; AR Tab 61 at 1513-45, 1545.27; AR Tab 64 at 1669. The administrative record also shows that the RFP is silent about when the Navy would issue delivery orders to establish the exact delivery dates for the LPE production units. AR Tab 23 at 208. Given this silence, the Navy's contract modification appropriately provides this missing information.

Because the record evidence shows that the Navy's post-award contract modification did not require that Hamilton perform duties materially different than Hamilton originally bargained for, Treadwell has not shown that the Navy's post-award contract modification constitutes a cardinal or material change to the LPE Contract.[6]

### C. Treadwell Is Not Entitled To Injunctive Relief

As a final matter, Treadwell has not demonstrated that it is entitled to the injunctive relief that it seeks in this matter. In its motion for judgment upon the administrative record, Treadwell requests that the Court, among other things, enjoin Hamilton from further performance under the LPE Contract. Pl. Mot. at 30-35. But, it is well-established that a plaintiff that has not actually succeeded upon the merits of its claims cannot prevail upon a request for injunctive relief.

---

[6] Treadwell also fails to explain how it could not have been on notice that the Navy would clarify the precise delivery dates for the LPE production units, given that the RFP is silent about when the Navy would issue delivery orders for the LPE production units. *See* AR Tab 23 at 208.

*Argencord Mach. & Equip., Inc. v. United States*, 68 Fed. Cl. 167, 176 (2005).  As discussed above, Treadwell has not prevailed upon the merits of any of its claims challenging the Navy's decision to award the LPE Contract to Hamilton.  And so, the Court must **DENY** Treadwell's request for permanent injunctive relief.

V.     **CONCLUSION**

In sum, the administrative record in this matter does not support any of Treadwell's challenges to the Navy's decision to award the LPE Contract to Hamilton.  Rather, the record evidence shows that the Navy's award decision was reasonable and in accordance with the terms of the RFP and applicable law.  The record evidence also does not substantiate Treadwell's claim that the Navy's post-award modification of the LPE Contract constitutes a cardinal or material change.

In addition, Hamilton has shown that Treadwell improperly seeks to supplement the extensive administrative record in this bid protest dispute with certain information that is not contained in the administrative record.  And so, for the foregoing reasons, the Court:

(1)    **DENIES** Treadwell's motion for judgment upon the administrative record;

(2)    **GRANTS** the government's and Hamilton's respective cross-motions for judgment upon the administrative record;

(3)    **GRANTS** Hamilton's motion to strike; and

(4)    **DISMISSES** the complaint.

The Clerk shall enter judgment accordingly.

Each party to bear their own costs.

Some of the information contained in this Memorandum Opinion and Order may be considered protected information subject to the Protective Order entered in this matter on March 2, 2017.  This Memorandum Opinion and Order shall be filed **UNDER SEAL**.  The parties shall review the Memorandum Opinion and Order to determine whether, in their view, any information should be redacted in accordance with the terms of the Protective Order prior to publication.  After doing so, the parties shall **FILE** a joint status report identifying the information, if any, that they contend should be redacted, together with an explanation of the

basis for each proposed redaction, on or before **April 15, 2019**.

       **IT IS SO ORDERED.**

                              s/ Lydia Kay Griggsby
                              LYDIA KAY GRIGGSBY
                              Judge